DECISION AND JUDGMENT ENTRY
This is an appeal from an Athens County Common Pleas Court summary judgment entered in favor of Grange Mutual Casualty Company, defendant below and appellee herein.
Cincinnati Insurance Company, defendant below and appellant herein, raises the following assignments of error for review:
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE, GRANGE MUTUAL CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT WHEN IT DETERMINED THAT APPELLEE'S UNINSURED MOTORISTS COVERAGE WAS EXCESS COVERAGE TO THAT OF THE APPELLANT'S."
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT TO DEFENDANT-APPELLEE, GRANGE, WHEN IT DETERMINED THAT APPELLANT, CINCINNATI, IS THE PRIMARY CARRIER BECAUSE THE PLAINTIFF WAS RIDING IN A CAR INSURED BY CINCINNATI."
The instant appeal involves a dispute between two insurance companies regarding each company's respective liability. The facts are undisputed. On February 8, 1997, Robert Tribe was a passenger in William T. Perry's vehicle. Clifford Malone's vehicle hit Perry's vehicle, causing Tribe to sustain injuries.
At the time of the accident: (1) Clifford Malone was an uninsured motorist; (2) appellant insured Perry's vehicle; and (3) Tribe had an automobile insurance policy with appellee.
On February 1, 1999, Robert and Rita Tribe filed a complaint against Malone, appellant, and appellee. The Tribes sought uninsured motorist coverage through both appellant and appellee.
Appellant and appellee subsequently filed motions for declaratory judgment requesting the court to determine each company's liability to the Tribes. Both companies filed motions for summary judgment with respect to the declaratory judgment actions and submitted stipulated facts for purposes of summary judgment. The parties stipulated that: (1) Tribe was the named insured under appellee's automobile insurance policy; (2) Tribe's insurance policy with appellee provided uninsured motorist coverage in the amount of $100,000 each person and $300,000 each accident; (3) Perry was the named insured under appellant's insurance policy; (4) Perry's insurance policy with appellant provided uninsured motorist coverage in the amount of $100,000 each person and $300,000 each accident; (5) Tribe was injured as a result of Malone's negligent operation of his vehicle; and (6) Malone was an uninsured driver.
Appellant argued that its insurance policy contained provisions providing that its liability should be reduced by the amount of appellee's liability. Appellee argued that its insurance policy did not require it to pay the Tribes' damages and that appellant is liable for $100,000.
On February 18, 2000, the trial court granted summary judgment in appellee's favor and denied appellant's motion. The court determined that appellant was the primary carrier responsible for paying the $100,000 liability limit. Appellant filed a timely notice of appeal.
Because appellant's two assignments of error both address the propriety of the trial court's summary judgment, we consider the two assignments of error together.
In its assignments of error, appellant argues that the trial court erred by construing appellant's insurance contract as providing the primary coverage and by construing appellee's insurance contract as providing excess coverage. Appellant, referring to its "other insurance" provision, argues that its contract clearly states that it will pay only its pro rata share of the loss. Appellant further argues that appellee's contract contains no excess coverage clause.
Appellee, on the other hand, asserts that its "other insurance" provision clearly provides that any coverage it is obligated to provide the Tribes is excess over the coverage appellant is obligated to provide. Appellee essentially contends that because appellant insured the vehicle in which appellee's insured was a passenger, appellant is the primary insurer and appellee provides only excess insurance.
Initially, we note that when reviewing a trial court's decision regarding a motion for summary judgment, an appellate court conducts ade novo review. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105, 671 N.E.2d 241, 245. Accordingly, an appellate court must independently review the record to determine if summary judgment was appropriate and need not defer to the trial court's decision. See Brownv. Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153,1157; Morehead v. Conley (1991), 75 Ohio App.3d 409, 411-12,599 N.E.2d 786, 788. Thus, in determining whether a trial court properly granted a motion for summary judgment, an appellate court must review the standard for granting a motion for summary judgment as set forth in Civ.R. 56, as well as the applicable law.
Civ.R. 56(C) provides, in relevant part, as follows:
 * * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
Consequently, a trial court may not grant a motion for summary judgment unless the evidence before the court demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., Vahila v. Hall (1997), 77 Ohio St.3d 421,429-30, 674 N.E.2d 1164, 1171.
In the case sub judice, the material facts are not in dispute. Rather, the dispute involves the interpretation of two insurance contracts and presents a question of law. Latina v. Woodpath Development Co. (1991),57 Ohio St.3d 212, 567 N.E.2d 262; Inland Refuse Transfer Co. v.Browning-Ferris Industries of Ohio, Inc. (1984), 15 Ohio St.3d 321, 322,474 N.E.2d 271.
When construing an insurance contract, a court employs the same principles involved in interpreting other written contracts. Hybud Equip.Corp. v. Sphere Drake Ins. Co., Ltd. (1992), 64 Ohio St.3d 657, 665,597 N.E.2d 1096, 1102. When the language of an insurance provision is clear and unambiguous, a "court may not `resort to construction of that language.'" Id. (quoting Karabin v. State Auto. Mut. Ins. Co. (1984),10 Ohio St.3d 163, 167, 10 OBR 497, 499, 462 N.E.2d 403, 406).
Furthermore, when reviewing contract language, a court should accord words and phrases their common meaning. As the court stated in Weiker v.Motorists Mutual Ins. Co. (1998), 82 Ohio St.3d 182, 185, 694 N.E.2d 966,968-69:
 "`[W]ords and phrases used in an insurance policy must be given their natural and commonly accepted meaning, where they in fact possess such meaning, to the end that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined.'"
(Quoting Gomolka v. State Auto. Mut. Ins. Co. (1982), 70 Ohio St.2d 166,167-168, 24 Ohio Op.3d 274, 275-276, 436 N.E.2d 1347, 1348); see, also,Tomlinson v. Skolnik (1989), 44 Ohio St.3d 11, 12, 540 N.E.2d 716,717-18; Nationwide Mutual Fire Ins. Co. v. Wittekind (1999),134 Ohio App.3d 285, 289-90, 730 N.E.2d 1054, 1057.
In the case sub judice, the parties dispute the interpretation of each company's respective "other insurance" provisions.
Appellant's "other insurance" provision reads as follows:
 "If there is other applicable similar insurance, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.
 If this policy and any other policy providing similar insurance apply to the same accident, the maximum limit of liability under all the policies shall be the highest applicable limit of liability under any policy. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance."
Appellee's "other insurance" provision reads as follows:
 "If there is other applicable similar insurance available under one or more policy or provision of coverage:
 1. Any recovery for damages for bodily injury sustained by an insured may equal but not exceed the higher of the applicable limit for any one vehicle under this insurance or any other insurance.
 2. With respect to a vehicle not owned by you or a family member, we will provide insurance only in the amount by which your limit of liability for this coverage exceeds the limit of liability for any other applicable insurance.
* * *"
A plain reading of appellee's policy reveals that appellee will pay damages to its insured as a result of an accident involving a vehicle that appellee's insured does not own only when appellee's insured's liability limit exceeds, or is excess to, any other applicable insurance's liability limit. According to appellee, the provision means that appellee will provide coverage to the Tribes only if the Tribes' liability limit pursuant to the Grange policy is greater than the liability limit for the Cincinnati policy. In other words, the Tribes first must exhaust the limit under the Cincinnati policy.
A plain reading of appellant's policy reveals that it will pay only its share of the loss when other applicable similar insurance is available. According to appellant, "other applicable similar insurance" is available to the Tribes. Appellant asserts that the Grange policy provides "other applicable similar insurance." Thus, appellant argues that pursuant to its pro rata clause, it and Grange should each pay one-half of the Tribes' damages.
In Motorists Mutual Ins. Co. v. Lumbermens Mutual Ins. Co. (1965),1 Ohio St.2d 105, 205 N.E.2d 67, the Ohio Supreme Court held that an excess insurance clause in an insurance contract generally takes precedence over a pro rata clause. The court stated:
 "Where one insurer insures against a loss and provides that it shall not be liable for a greater proportion of the loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss, and another insurer insures against the same loss and additionally provides that such insurance shall be excess insurance over any other valid and collectible insurance available to its insured, effect should be given to the latter provision, and the first insurer should be held to be the primary insurer."
 Id., at syllabus.
In Motorists Mutual, the court further discussed such "dual insurance" situations as follows:
 "`The "other insurance" clause in American's policy is identical with that contained in the "National Standard Automobile Policy," used by the great majority of casualty insurers in the United States. * * * That policy as well as the policies involved here extends coverage to the named insured when he drives a car other than his own and also to any other person when driving the car of the named insured. For that reason there will be dual insurance when an accident is caused by a person not driving his own car and both the driver and the owner are insured under a standard policy. Clearly the excess provision of the "other insurance" clause is intended to show how the loss should be borne in this frequently recurring situation. It is impossible, and could not have been intended, that the excess provision would govern with respect to the insurance of the driver and that at the same time the prorate provision would control with respect to the insurance of the owner because proration of the loss and treating the driver's insurance as excess over the insurance of the owner obviously lead to inconsistent results. The only construction of the "other insurance" clause under which both its parts will be meaningful is that the excess provision alone controls in every situation which falls within its terms, such as when a person is driving the car of another and both the driver and the owner have insurance, and that the prorate provision alone governs in all other situations, for example, when more than one policy has been issued to the same person. When the driver's insurance is excess, it necessarily follows that the insurance of the owner is primary, and therefore the owner's insurer must bear the entire loss to the extent of the limits of the policy.'"
 Id., 1 Ohio St.2d at 107-08, 205 N.E.2d at 68-69 (quoting_AmericanAutomobile Ins. Co. v. Republic Indemnity Co. of America, 52 Cal.2d 507,512, 341 P.2d 675).
In Baskin v. Allstate Ins. Co. (June 17, 1998), Summit App. No. 18653, unreported, a case involving facts similar to the case at bar, the court applied the Motorists Mutual holding to conclude that the passenger's insurance was excess to that of the driver's insurance. In Baskin, Daniel Baskin was injured while a passenger in a car in which Christopher J. Passalaqua was driving. Anthony Passalaqua owned the car. Baskin sought underinsurance through Passalaqua's insurer, Allstate, and through G.R.E. Insurance.
Allstate's policy specified that "an additional insured person shall be insured only to the extent that the limits of liability for Coverage SS under this policy exceed the limits for similar coverage under any other policy." Allstate's "other insurance" provision stated:
 "If the insured person sustaining bodily injury was occupying a vehicle you do not own which is insured for this coverage under another policy, this coverage will be excess. * * * If more than one policy applies to the accident on a primary basis, the total benefits payable to any one person will not exceed the maximum benefits payable by the policy with the highest limit for uninsured motorists coverage."
GRE's other insurance provision provided:
 "If there is other applicable similar insurance on a loss covered by this Part, we will pay only that proportion of the loss that our limit of liability bears to the total limits of all applicable similar insurance. Insurance afforded under this Part for a vehicle you do not own is excess over any other applicable similar insurance."
The Baskin court relied upon Motorists Mutual to conclude that Allstate provided the primary insurance and that GRE provided excess coverage only.
In Lemble v. Belknap (Sept. 30, 1999), Lucas App. No. L-98-1417, unreported, the court also relied upon Motorists Mutual to conclude that generally an excess clause takes precedence over an "other insurance clause." In Lemble, Carol Lemble was driving a vehicle owned by Donald Toeppe, Jr. Tamara Lemble and Joseph Lemble, Jr. were passengers. The Toeppe vehicle was involved in an accident with Jennifer Belknap's car. Cincinnati Insurance Company insured Lemble. Toeppe was insured with Commercial Union Insurance Company. After exhausting Belknap's insurance liability limit, the Lembles sought underinsurance benefits through Cincinnati and Commercial Union. Cincinnati argued that Commercial Union provided the primary insurance. Commercial Union argued that Cincinnati and Commercial Union should share the Lembles' damages pro rata.
Commercial Union's "other insurance" clause provided:
 If there is other applicable insurance available under one or more policies or provisions of coverage:
 1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.
 2. Any insurance we provide with respect to a vehicle you do not own shall be excess over any collectible insurance providing coverage on a primary basis.
3. If the coverage under this policy is provided:
 a. On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.
 B. On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis."
Cincinnati's "other insurance" provision provided:
 "If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.
 If this policy and any other policy providing similar insurance apply to the same accident, the maximum limit of liability under all the policies shall be the highest applicable limit under any policy. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance."
The court concluded that Commercial Union provided the primary coverage, even though both policies contained pro rata clauses.
In the case at bar, appellee's policy contains an excess clause and appellant's policy contains a pro rata clause. Pursuant to the express holding in Motorists Mutual, we agree with the trial court's conclusion that appellant is the primary insurer and that appellee's policy provides excess coverage to the Tribes. See Lemble; Baskin; see, also, MotoristsMutual, 1 Ohio St.2d at 107, 205 N.E.2d at 68 (stating that "insurance follows the car"); Trinity Universal Ins. Co. v. General Accident, Fire Life Assur. Corp. Ltd. (1941), 138 Ohio St. 488, 35 N.E.2d 836; Gregoryv. Allstate Ins. Co. (June 24, 1999), Cuyahoga App. No. 74119, unreported (finding excess clause in passenger's insurance policy to take precedence over pro rata clause in driver's insurance policy); Grange Mutual Cas.Co. v. Casseday (Nov. 23, 1988), 87-C-59, unreported.
Appellant argues, however, that appellee's policy does not contain an excess insurance clause and, thus, that Motorists Mutual, Baskin, andLemble do not apply. In its brief, appellant states:
 "Appellee's policy simply does not have a provision that provides that its insurance is excess insurance over any other valid and collectible insurance available to its insured. The word `exceed' is used in Appellee's policy to determine its limit in this situation where there are two applicable underinsured policies. The word `exceed' is not used in Appellee's policy to determine when its policy applies."
We, however, find no merit to appellant's semantic argument. The ordinary meanings of the words "exceed" and "excess" is the same. Both words imply being greater. The former is a verb; the latter can be a noun or an adjective. Simply because appellee's policy uses the verb and appellant's policy uses the noun or adjective part of speech does not result in the conclusion that appellee's provision is not an excess insurance clause.
Furthermore, we note that appellee's policy does not provide "similar coverage." Appellee's policy states that it does not provide similar coverage to its insured for a vehicle that the insured does not own. Rather, appellee's policy states that its coverage will be excess. Thus, the coverage is not similar. See Nationwide Mut. Ins. Co. v. Robb (Apr. 24, 1996), Summit App. No. 17115, unreported; State Farm Mutual Auto.Ins. Co. v. Nationwide Mutual Ins. Co. (May 24, 1995), Montgomery App. No. 14787, unreported.
For example, in Nationwide Mildred M. Pride was injured when the automobile in which she was a passenger collided with another vehicle. Nationwide insured the driver of the vehicle in which Pride was a passenger. Economy Preferred Insurance Company insured Pride. Pride sought underinsurance through Nationwide and Economy. Nationwide instituted a declaratory judgment action seeking to have court declare that Economy provided Pride with the primary insurance. Economy asserted that Nationwide's policy provided the primary underinsurance for Pride.
Nationwide's policy provided that it would pay underinsured motorist benefits to passengers of its insureds if the passengers did not have similar coverage under another policy. Economy's policy included a provision that its insureds' underinsured motorist coverage was excess coverage if the insured was covered by other collectable insurance.
The court concluded that Economy's policy, because it provided excess coverage, did not provide coverage similar to Nationwide's policy. Thus, the court concluded that Nationwide was the primary insurer.
Similarly, in State Farm Mutual Auto. Ins. Co. v. Nationwide MutualIns. Co. (May 24, 1995), Montgomery App. No. 14787, unreported, the court determined that "other similar insurance" did not include excess insurance. In State Farm, Richard Thurman was injured while a passenger in Nicklaus' vehicle. Tonja Condray's vehicle was involved in the accident. Condray was insured with New Hampshire Insurance Company. Nicklaus was insured with Nationwide. Thurman was insured with State Farm. Thurman filed underinsurance claim with Nationwide and State Farm. Both State Farm and Nationwide policies contained "other insurance" clauses.
State Farm's policy provided:
 "C. If the insured sustains bodily injury while occupying a vehicle not owned by you and such vehicle is described in the declarations page of another policy providing similar coverage, or its driver is an insured on another policy, this coverage applies:
 (1) as excess to any similar coverage which applies to the vehicle or its driver as primary coverage; but;
 (2) only in the amount by which it exceeds the primary coverage.
Nationwide's policy provided:
 "We will also pay compensatory damages, including derivative claims, which are due by law to other persons who:
 1. Are not a named insured or an insured household member for similar coverage under another policy; and
2. Suffer bodily injury while occupying:
(a) your auto.
Nationwide argued that it did not provide any insurance to the passenger because the passenger had similar insurance under another policy. The court of appeals disagreed, stating:
 "The policy which Nationwide issued to Nicklaus obligates it to provide underinsurance coverage to Nicklaus and his passengers up to its policy limits, unless those persons have `similar coverage under another policy.' The underinsurance coverage which State Farm is obligated to provide Thurman under its policy with him does not provide `similar coverage' for his claims because Nationwide coverage operates to restrict State Farm's obligation to one of providing only `excess' coverage, that is, secondary coverage applicable only after the primary coverages are exhausted."
Thus, based upon the foregoing authorities, we agree with the trial court's conclusion that appellant's policy provides the primary coverage and that appellee's policy provides excess coverage. We disagree with appellant's argument that appellee's policy does not contain an excess clause.
Accordingly, based upon the foregoing reasons, we overrule appellant's first and second assignments of error and affirm the trial court's judgment.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.
Harsha, J. Evans, J.: Concur in Judgment Opinion
 ___________________________ Peter B. Abele, Judge
NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.