[Cite as *Great Am. Assur. Co. v. AES Promotions L.L.C.*, 2011-Ohio-4443.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

GREAT AMERICAN ASSURANCE CO.

    Plaintiff-Appellant

-vs-

AES PROMOTIONS, LLC, et al.

    Defendants-Appellees

JUDGES:
Hon. W. Scott Gwin, P. J.
Hon. John W. Wise, J.
Hon. Patricia A. Delaney, J.

Case No. 2010 AP 10 0041


O P I N I O N



| | |
|---|---|
| CHARACTER OF PROCEEDING: | Civil Appeal from the Court of Common Pleas, Case No. 2008 CV 02 0121 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | September 1, 2011 |
| APPEARANCES: | |
| For Plaintiff-Appellant | For Defendant-Appellees |

DONALD L. ANSPAUGH
JAMES H. LEDMAN
ISAAC, BRANT, LEDMAN & TEETOR
250 East Broad Street, Suite 900
Columbus, Ohio 43215-3742

MICHAEL A. THOMPSON
CRESCENT POINTE BUILDING
4774 Munson Street, NW
Suite 400
Canton, Ohio 44718

*Wise, J.*

**{¶1}** Plaintiff-Appellant Great American Assurance Company appeals the decision of the Tuscarawas County Court of Common Pleas finding that it was required to defend and indemnify Defendants-Appellees AES Promotions, LLC, Charles Bingham, Jeff Ricker and Robert Page.

## STATEMENT OF THE FACTS AND CASE

**{¶2}** This case arose as a result of a fatal accident which occurred at Crow Canyon Raceway.

**{¶3}** The relevant facts are as follows:

**{¶4}** On July 1, 2007, Zachary Wachs was killed in an accident at Crow Canyon Raceway in Uhrichsville, Ohio. Appellee Robert Page was an AES worker who, on the day of the accident, was operating a tractor and was engaged in grooming the motocross track when a motorcycle operated by Zachary Wachs came over a hill or jump at the motorcycle track and collided with the tractor, killing Wachs. No motorcycle racing event was scheduled on this day.

**{¶5}** Appellees Charles Bingham and Jeffery Ricker were the owners and members of Appellee AES Promotions, LLC, which operated Crow Canyon Raceway under a lease agreement with the owner of the property.

**{¶6}** On November 16, 2007, Daniel Wachs, Administrator of the Estate of Zachary Wachs, deceased, filed a Complaint in the Tuscarawas County Common Pleas

Court against Defendants AES, Page, Bingham and Ricker, seeking to recover damages for bodily injury suffered by Zachary Wachs, including his wrongful death, in the accident. (Case No. 2007 CT 11 0872.) This case was voluntarily dismissed without prejudice by Daniel Wachs but then re-filed under Case No. 2009 CT 06 0525 against the same Defendants seeking the same relief along with claims not material to this case being stated against other Defendants.

{¶7} Appellant Great American Assurance Co. (hereinafter "Great American") is a liability insurance carrier who had issued an insurance policy to OHV Purchasing Group, LLC and Trailpass, LLC as named insureds for the policy period of June 9, 2007 to June 9, 2008, ("the Policy"). The Policy provided Commercial General Liability coverage to persons and organizations qualifying as insureds thereunder, subject to the Policy's terms and conditions.

{¶8} Great American brought a declaratory action against Appellees AES, Charles Bingham, Jeffery Ricker, Robert Page, as well as Daniel Wachs, Administrator of the Estate of Zachary Wachs, deceased. Great American's Complaint for Declaratory Judgment seeks a judgment declaring that it is neither obligated to defend nor indemnify Appellees against the claims asserted against them in Tuscarawas County Court of Common Pleas Case No. 2007 CT 110872, the underlying case brought by Daniel Wachs, as Administrator, wherein it is alleged that Zachary Wachs was injured and killed as a result of Defendants-Appellees' negligent, reckless, and/or intentional conduct.

**{¶9}** In April and May, 2009, Appellants and Appellees, respectively, filed Motions for Summary Judgment with both motions being overruled per Judgment Entry filed July 2, 2009.

**{¶10}** A trial before the court commenced and was completed on March 2, 2010.

**{¶11}** At trial, Great American Assurance presented testimony by Harold Don DeWitt and Appellees presented testimony by Jeff Ricker and also presented in evidence the deposition of Michael Wendt, a claims representative of K & K Insurance Group.

**{¶12}** In his deposition, Michael Wendt summarized the relationship between Appellant Great American Assurance Co. and the parties as well as the other insurance companies involved herein. According to Wendt, K & K Insurance Group is owned by Aon Corporation out of Chicago. (Wendt. Depo. at 11). K & K acted as a managing general agent/underwriter who provided policy administration, claims services, claims underwriting, loss control, sales and marketing, all within one building, which also wrote business with other carriers, including Great American, AIG, and Nationwide. Id. at 15. Great American issued the policy in this case. (T. at 11, 12). Cool Agency, Inc. was the agent for K & K with authority to issue certificates of insurance. Id. at 9-10. K & K underwrote insurance for OHV and Trailpass. Id. at 13. K & K Insurance Group, Inc. ("K & K") served as the underwriter of this policy, as well as the claims-handler and investigator as to the underlying tort case.

**{¶13}** AES applied for membership in Trailpass, LLC, in March, 2007, and was accepted in April, 2007. Through this membership, AES (and thus Bingham, Ricker and

Page) became additional insureds under the policy. Great American is defending AES, Bingham, Ricker and Page pursuant to a full reservation of rights.

{¶14} Harold DeWitt, a former K & K underwriter, testified that in 2005, he was contacted directly by the insurance agent for Trailpass, LLC, Cool Agency, about obtaining liability insurance for Trailpass, LLC. (T. at 14). Trailpass was represented to K & K as an organization involved in the promotion of recreational trail riding on all terrain vehicles and sometimes motorcycles, travelling on routes established through wooded acreage. This membership organization was open to clubs and trail operators and approved or disapproved by Trailpass alone based on the routes that were established. (T. at 14-16). Benefits of membership were promotion of the facilities on the Trailpass website and the availability of insurance coverage. (T. at 73).

{¶15} According to DeWitt, recreational trail riding was represented as a non-racing outdoor activity typically enjoyed by older individuals. (T. at 13, 14-17). He explained that such recreational trail riding is a hobby effort of individuals to utilize their ATV's and in some cases motorcycles on a set route through established trails through the acreage of facilities. (T. at 16).

{¶16} DeWitt also stated that in the insurance program constructed by K & K for Trailpass, insurance coverage was never intended for motocross riding and motocross was never understood to be a part of the business of Trailpass. (T. at 19). DeWitt explained that motocross riding is a competitive activity which takes place at a set facility and is limited in length, is set up for speed and challenge, with a competitive race environment, which incorporates a shared start/finish line and a starter stand, with protected or restricted areas, which may have roping or tape showing the design of the

track and the direction the riders need to go. (T. at 18-19). He went on to state that the tracks typically include some type of jumps, or moguls, anywhere between five to twenty feet high. (T. at 20). He further explained that compared to trail riding, motocross is focused on racing. Id. Racing at these facilities involves jumps, aggressiveness, and side by side racing with concerns over falls and spills. Id.

**{¶17}** DeWitt testified that insurance for motocross was available through K & K but that such coverage was through a different program with sufficiently higher premiums. He explained that historically, insurance companies have sustained greater losses through motocross than trail riding. (T. at 20-21.)

**{¶18}** In deciding whether to recommend the Trailpass program to Great American, K & K reviewed all its information from the insurance agent for Trailpass, LLC. It was Trailpass which decided whether or not a facility could be a member. (T. at 22-24). The Trailpass insurance premiums were determined by total trail miles operated and overseen by members. (T. at 21).

**{¶19}** DeWitt explained that the policy in this case was thus configured to restrict liability coverage to trail riding to the exclusion of motocross. According to DeWitt, this was accomplished through policy language employing two concepts: 1) additional insureds were only insured for the usual and customary activities of the named insured, that is, Trailpass, and, 2) that coverage was excluded for open riding or practice facilities. The essential point was to insure the activities of the additional insured if they were related to the activities of Trailpass. (T. at 21- 22).

**{¶20}** DeWitt stated that under the policy, because the decedent Zachary Wachs was riding his motorcycle on the motocross track at the time of the accident, there is no

insurance coverage. (T. at 26-27). He explained that under the policy, the motocross racing facility set up for speed and challenge, is therefore not recreational, is not a hobby environment, and such activity does not fall within the usual and customary operations of Trailpass. (T. at 28). DeWitt did state that if Zachary Wachs had been injured while riding on the trails there would be coverage. Id.

{¶21} The trial court also heard testimony from Jeff Ricker of AES. Ricker testified that the motocross track where Wachs was killed was a separate and distinct, identifiable component of the Crow Canyon facility. Crow Canyon then consisted of 400 acres, advertised to the public to be comprised of trails, the 1.3 mile closed course motocross track where Wachs was killed and a small "pee wee" motocross track. (T. at 57-59). None of these trails intersected the big motocross track and Ricker described it as "easy to see", being marked by posts and tape and hay bales as well as having a dedicated entrance/exit, scoring tower, and spectator fencing. (T. at 62, 64-70). AES separately mentioned both the trails and the motocross tracks on its website. According to Ricker, Zachary Wachs was killed while Crow Canyon was holding "open riding" or practice where, for a fee, he could ride the motocross track and the trails. (T. at 111-113).

{¶22} AES, through Ricker, had contact only with Jeremy Hannah of Trailpass as to the subject of insurance and membership in Trailpass. (T. at 76). Ricker and AES claim that Hannah assured them that as long as AES had a trail system, there would also be insurance coverage for the motocross track. (T. at 73, 78). He further stated that Hannah informed him that he would need to obtain separate insurance coverage for any competition or racing type of events. (T. at 74).

**{¶23}** Ricker stated that in the actual application for membership, the information provided to Trailpass was minimal and did not include any photos, GPS maps of trails or any detailed description of the type of riding done at Crow Canyon. (T. at 75).

**{¶24}** Ricker testified that no one with AES provided any information to or had any contact with anyone from Great American, K & K or the Trailpass insurance agent, nor did AES receive any documents about insurance before this accident happened. (T. at 77). No monies were paid by AES directly to any company but Trailpass. (T. at 78).

**{¶25}** On September 23, 2010, the trial court issued both its Decision and Judgment Entry finding against Great American.

**{¶26}** Appellant now appeals, raising the following assignment of error:

**ASSIGNMENT OF ERROR**

**{¶27}** "I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT APPELLANT GREAT AMERICAN ASSURANCE CO. IS REQUIRED TO DEFEND AND INDEMNIFY APPELLEES AES, CHARLES BINGHAM, JEFF RICKER AND ROBERT PAGE AGAINST CLAIMS ASSERTED AGAINST THEM IN THE UNDERLYING CASE, (TUSCARAWAS COUNTY, OHIO COMMON PLEAS CASE NO. 2009 CT 06 0525)."

I.

**{¶28}** In its sole assignment of error, Appellant argues that the trial court erred in finding that it had a duty to defend and indemnify Appellees in the underlying wrongful death action. We disagree.

{¶29} In this case, it is undisputed that the insurance policy through Appellant Great American Assurance was in effect on the date of the accident herein and that Appellees were insureds under said policy.

{¶30} Appellant, however, argues that there are both definitional provisions and policy exclusions in the insurance policy which support their position of no duty to defend and indemnify.

{¶31} The first definitional section cited by Appellant is contained in Endorsement CG 20 26 07 04, which provides:

{¶32} **"Section II-Who is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

{¶33} "A. In the performance of your ongoing operations; or

{¶34} "B. In connection with your premises owned by or rented to you."

{¶35} The Schedule in this Endorsement identifies the following as such additional insureds[1]:

{¶36} "**Name Of Additional Insured Person(s) Or Organization(s)**

{¶37} "a. Any person or organization engaged in operating, managing, sanctioning, sponsoring the "covered program", or providing the "premises" for a "covered program", including officials of the "covered program".

---

[1] The amendment in Policy Change No. 0002 is reflected in item d.

**{¶38}** "b. Any "participant" (excluding drivers), "competition vehicle" owner and "competition vehicle" sponsor.

**{¶39}** "c. Any "participant" driver but only with respect to "bodily injury" or "property damage" to persons other than any other driver.

**{¶40}** "d. Landowners and government entities who allow use of their land to be used as trails by member clubs of OHV Purchasing Group, LLC and Trailpass, LLC. Club members and Chapters of Clubs but only as respects to their liability for their respective club activities. Clubs are defined as an organization which is a member in good standing of OHV Purchasing Group, LLC and Trailpass, LLC at the time coverage commences, or otherwise added with the approval of the company."

**{¶41}** Appellant argues that AES would fall within paragraph "a" if the activity was a "covered program".

**{¶42}** "Covered Program" is defined in endorsement GAC 33 38 GC as follows:

**{¶43}** "C. The following definitions are added to Section V. [of CG 00 01 10 01]

**{¶44}** "DEFINITIONS:

**{¶45}** "* * *

**{¶46}** "24. "Covered Program" means any event which:

**{¶47}** "a. Was specifically submitted to us as a scheduled event or activity at the inception of this policy; or

**{¶48}** "b. Is usual and customary to your business and events; or

**{¶49}** "c. Has been specifically endorsed to this policy."

**{¶50}** Both parties herein agree that neither a nor c above apply in this case, leaving only those activities which are "usual and customary to your business and events" as covered programs.

**{¶51}** Appellant argues that Trailpass' usual and customary business is trail riding and not motocross.

**{¶52}** Further, Appellant argues that no coverage exists for a motocross accident under CG 20 26 07 04 as set forth above as insurance under such endorsement is provided only with respect to AES' "liability for "bodily injury" … caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf" while "[in] the performance of your ongoing operations…"  Again, Appellant argues that the focus of Trailpass' business is trail riding, not motocross.  The second definitional section cited by Appellant is contained in <u>Endorsement CG 20 02 11 85</u>, which provides:

**{¶53}** "**ADDITIONAL INSURED - CLUB MEMBERS**

**{¶54}** "WHO IS AN INSURED (Section II) is amended to include as an insured any of your members but only with respect to their liability for your activities or activities they perform only on your behalf."

**{¶55}** Appellant claims that that AES does not qualify for coverage under this endorsement because such coverage is limited to Trailpass members "only with respect to their liability for your activities or activities they perform only on your behalf" arguing that any activities which were conducted at the motocross racetrack were AES' own activities and were not done on behalf of Trailpass.

**{¶56}** Appellant herein states that had Zachary Wachs been riding on the Crow Canyon trails instead of the motocross track at the time of the accident, coverage would have been available under the policy because trail riding is a "covered program" as an activity which is usual and customary to Trailpass' business.

**{¶57}** Appellant further argues that even if Appellee were an insured under the policy in this instance, certain exclusions in the policy also negate coverage.

**{¶58}** Endorsement GAC 33 61

**{¶59}** "SCHEDULE

**{¶60}** "Description of Designated Operation(s):

**{¶61}** " 'Open riding and practice activities' on the insured premises during nonracing days. 'Open riding and practice activities' are defined as times in which "covered programs" are not occurring and participation is open to the general public either on a club membership basis or on a fee basis."

**{¶62}** Endorsement GAC 33 38 adds exclusions and definitions to the policy, deleting the Exclusion in Section I, Coverage A.2.h.(2) and replacing it with the following, so as to exclude bodily injury arising out of:

**{¶63}** "The use of 'mobile equipment' in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity. This exclusion does not apply to 'competition vehicles' or 'official vehicles' during a 'covered program' while on 'premises'."

**{¶64}** "Bodily injury" . . . arising out of the use of the "premises" for any exhibition, event or activity not a part of the "covered program"

**{¶65}** Endorsement GAC 33 55 CG

**{¶66} LIMITED EVENT COVERAGE**

**{¶67}** "This insurance applies only to "bodily injury" . . . arising out of an "occurrence" . . . which takes place during an event shown in the Schedule below.

**{¶68}** "* * *

**{¶69} "SCHEDULE**

**{¶70}** "TYPE OF EVENT

Limited to OHV approved trails and activities.

**{¶71}** "DATE OF EVENT

As Reported

**{¶72}** "LOCATION

Various

**{¶73}** "LIMITS

Per policy

**{¶74}** "PREMIUM

Per policy"

**{¶75}** Appellant again argues that under the above exclusions, no coverage exists for claims arising out the accident which took place on July 1, 2007, on the motocross track because Zachary Wachs was engaged in the activity of motocross, which was not a "covered program" and not trail riding, which was a "covered program".

**{¶76}** Insurance policies are contracts and their interpretation is a matter of law for the court. *City of Sharonville v. American Employers Insurance Company,* 109 Ohio St.3d 186, 187, 2006-Ohio-2180, 846 N.E.2d 833, at paragraph 6, citing *Alexander v. Buckeye Pipeline Company* (1978), 53 Ohio St.2d 271, 374 N.E.2d 146, paragraph 1 of

the syllabus. Insurance coverage is determined by reasonably construing the contract in conformity with the intention of the parties, as interpreted from the ordinary and commonly understood meaning of the language employed. *King v. Nationwide Insurance Company* (1988), 35 Ohio St.3d 208, 211, 519 N.E.2d 1380. If a provision of a contract of insurance is reasonably susceptible to more than one interpretation, its provisions will be construed strictly against the insurer and liberally in favor of the insured. *King,* supra, syllabus. However, this rule does not apply if it results in an unreasonable interpretation of the words of the policy. *Westfield Insurance Company v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, paragraph 14, citing *Morfoot v. Stake* (1963), 174 Ohio St. 506, 2300 2d 144, 190 N.E.2d 573. Additionally, exclusion in an insurance policy will be interpreted as applying only to that which is clearly intended to be excluded. *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.* (1992), 64 Ohio St.3d 657, 597 N.E.2d 1096.

{¶77} Upon review of the insurance policy in this case, we find that while such policy did not cover scheduled racing and/or competitive motocross events, it is not clear that riding on the race tracks during times when there were no scheduled events was meant to be excluded. At the time of Mr. Wachs' accident, the entire 400 acre area, which included all the trails and the two tracks, were open to anyone who paid their $15.00 entrance fee, which Mr. Wachs did. This type of open riding, on both the trails and the tracks, was the usual and customary business of AES.

{¶78} At the time of the accident, while Mr. Wachs was riding his motorcycle on the track, we find that he was not engaged in a motocross type event as described

earlier in that there was not a scheduled race he was participating in, nor was he competitively racing side by side with another rider.

{¶79} Based on the foregoing, we find that the trial court did not err in finding that insurance policy in this case did not preclude coverage for the claims in the underlying lawsuit and that Appellant had a duty to defend and indemnify Appellees against such claims.

**{¶80}** Appellant's sole assignment of error is overruled.

**{¶81}** For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Tuscarawas County, Ohio, is affirmed.

By: Wise, J.

Gwin, P. J., and

Delaney, J., concur.

_____

_____

_____

JUDGES

JWW/d 0818

IN THE COURT OF APPEALS FOR TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| GREAT AMERICAN ASSURANCE CO. | : | |
| | : | |
| Plaintiff-Appellant | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| AES PROMOTIONS, LLC, et al. | : | |
| | : | |
| Defendants-Appellees | : | Case No. 2010 AP 10 0041 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio, is affirmed.

Costs assessed to Appellant.

_____

_____

_____

JUDGES