HYBUD EQUIPMENT CORP. ET AL., APPELLANTS AND CROSS-APPELLEES, *v.* SPHERE DRAKE INSURANCE COMPANY, LTD., APPELLEE AND CROSS-APPELLANT.

[Cite as *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.* (1992), 64 Ohio St.3d 657.]

(No. 91–641—Submitted March 18, 1992—Decided September 16, 1992.)

*Day, Ketterer, Raley, Wright & Rybolt* and *Matthew Yackshaw,* for appellants and cross-appellees.

*Reminger & Reminger Co., L.P.A., David Ross* and *Clifford C. Masch; Arter & Hadden* and *Louis Gerber,* for appellee and cross-appellant.

*George Pappas Co., L.P.A.,* and *Dennis J. Bartek; Lord, Bissell & Brook, John B. Haarlow, Michael P. Comiskey, Daniel I. Schlessinger* and *Diane I. Jennings,* urging reversal and in support of the cross-appeal, on behalf of *amicus curiae* John Richard Ludbrook Yovell.

*Wiley, Rein & Fielding, Thomas W. Brunner, Christopher D. Cerf* and *Kirk J. Nahra; Montgomery, Rennie & Jonson* and *Frederick M. Morgan, Jr.,* urging reversal and in support of the cross-appeal, on behalf of *amici curiae* Insurance Environmental Litigation Association et al.

*Brouse & McDowell, Frank E. Quirk, Paul A. Rose* and *Keven D. Eiber; Anderson, Kill, Olick & Oshinsky, Eugene R. Anderson, Thomas H. Sear* and *Thomas G. Rozinski,* urging affirmance and in opposition to the cross-appeal, on behalf of *amici curiae* city of Akron et al.

*Graydon, Head & Ritchey* and *John C. Greiner; Covington & Burling, William H. Allen, William F. Greaney* and *Adam M. Cole,* urging affirmance and in opposition to the cross-appeal, on behalf of *amici curiae* Ohio Manufacturers' Association et al.

*Jones, Day, Reavis & Pogue, Steven E. Sigalow, Kathleen B. Burke, Joseph C. Weinstein* and *Charles D. Hassell,* urging affirmance and in opposition to the cross-appeal, on behalf of *amici curiae* Ohio Township Association et al.

*Squire, Sanders & Dempsey, John R. Gall, David W. Alexander, Karen A. Winters* and *Philomena M. Dane,* urging affirmance and in opposition to the cross-appeal, on behalf of *amici curiae* Danis Environmental Management Co. et al.

*Lee I. Fisher,* Attorney General, *Beverly Yale Pfeiffer* and *Ellen B. Leidner,* urging affirmance and in opposition to the cross-appeal on behalf of *amicus curiae* Lee I. Fisher.

---

CHRISTLEY, J. In their appeal before this court, the three insureds, IEL, Hybud and Budoff, have raised four issues concerning their right to a jury trial and the sufficiency of the damages award. In its cross-appeal, Sphere Drake has also raised a number of issues, the majority of which pertain to the proper interpretation of the language in the two policies.

For the reasons which follow, this court finds that it is not necessary for us to address the majority of these issues, since the determination of the following single issue will control the outcome in this case. Specifically, we conclude that Sphere Drake was not under an obligation to defend the insureds in the three underlying actions because the claims in those actions were excluded from coverage by the pollution exclusion in each of the two policies. Accordingly, the judgments of both the trial and appellate courts are reversed.

I

As previously noted, in rejecting Sphere Drake's argument as to the application of the pollution exclusion in this case, the appellate court relied heavily upon its prior decision in *Buckeye Union, supra.* In that case, Liberty Solvents, the insured, was named as a defendant in an action involving the cleanup of a hazardous waste facility. The complaint in the underlying lawsuit alleged that Liberty Solvents had contracted with Chem–Dyne to dispose of its waste, and that this waste had escaped from containers and filtered into the surface water, soil, and groundwater of the surrounding area.

As in the instant case, Liberty Solvents requested that its insurer, Buckeye Union, defend it in the lawsuit. In response, Buckeye Union initiated a declaratory judgment action, seeking a determination that it was not obligated to defend under the policy.

In reversing the summary judgment in favor of Buckeye Union, the Ninth Appellate District first held that the release of pollutants and the resultant damages constituted an "occurrence"[1] to which the policy applied. In the Buckeye Union policy, the term "occurrence" was defined in the following manner:

" ' "[O]ccurrence" means an accident, including continuous or repeated exposure to conditions, which results in * * * property damage neither expected nor intended from the standpoint of the insured[.]' " *Id.*, 17 Ohio App.3d at 131, 17 OBR at 230, 477 N.E.2d at 1232.

---

1. In the case at bar, the policies at issue do not define the term "occurrence" as it is used in the comprehensive general liability provisions. For the purposes of this discussion, it is not necessary for us to define this term, as our analysis will focus upon the meaning of the phrase "sudden and accidental" in the exception to the pollution exclusion. In addition, the parties have not raised the question of the proper interpretation of "occurrence."

However, we note that a review of the multitude of decisions on this subject shows that the policies usually define the term, and do so in the same manner as does the Buckeye Union policy.

Notwithstanding the exact language of the definition, the court concluded that the term "occurrence" encompassed more than accidents, and was synonymous with the word "event." The court also emphasized that even if the release of the pollutants was intentional, the actions of the insured could still be an "occurrence" if the resulting damages were not intended or expected.

The *Buckeye Union* court then turned its attention to the pollution exclusion in the policy. The language of that provision was virtually identical to the exclusion in the policy now before this court. Essentially, the exclusion stated that the coverage did not apply to any bodily harm or property damages resulting from the release or escape of pollutants into or upon land, air or water. The final clause in the exclusion then stated that the exclusion did not apply if the release or escape is "sudden and accidental."

In analyzing the exception to the exclusion, the court began by concluding that the phrase "sudden and accidental" was ambiguous, and accordingly had to be construed against the insurer. The court then quoted from other decisions which had determined that the word "sudden" should not be interpreted as being limited to an instantaneous happening, but should cover any release or escape which was unexpected by the insured. By following this interpretation, the court read "sudden and accidental" as having the same meaning as the phrase "neither expected nor intended" in the definition of occurrence:

" 'When viewed in light of the case law cited, the clause can be interpreted as simply a restatement of the definition of "occurrence"—that is, that the policy will cover claims where the injury was "neither expected nor intended." It is a reaffirmation of the principle that coverage will not be provided for intended results of intentional acts, but will be provided for the unintended results of an intentional act.' " *Id.* at 133, 17 OBR at 232, 477 N.E.2d at 1234, quoting *Jackson Twp. Mun. Util. Auth. v. Hartford Acc. & Indemn. Co.* (1982), 186 N.J.Super. 156, 164, 451 A.2d 990, 994.

Applying this logic to the facts of that case, the *Buckeye Union* court held that the exception to the pollution exclusion applied, since the release of pollutants had been unexpected and unintended by the insured. Accordingly, that court found that the insured was entitled to a defense and indemnity in the underlying lawsuit. (The court also found an obligation to indemnify, but that issue was not argued on appeal.)

## II

During its discussion of the pollution exclusion, the *Buckeye Union* court stated that the "overwhelming authority from other jurisdictions" supported

its interpretation of the "sudden and accidental" phrase. *Id.*, 17 Ohio App.3d at 132, 17 OBR at 231, 477 N.E.2d at 1234. While this may have been true in 1984, recent decisions have rejected the holding of *Buckeye Union*.

A prime example of this recent trend is the decision of the North Carolina Supreme Court in *Waste Mgt. of Carolinas, Inc. v. Peerless Ins. Co.* (1986), 315 N.C. 688, 340 S.E.2d 374. There, the insured was engaged in the business of hauling waste materials and disposing of them in a local landfill. When the owners of the landfill were sued by the United States, the insured was added as a third-party defendant. As in the instant case, when its insurer refused to defend it, the insured brought a declaratory judgment action.

Upon reviewing the language of the pollution exclusion and the definition of "occurrence," the Supreme Court of North Carolina held that the provisions were not ambiguous because the language could reasonably be interpreted in only one manner:

"We do not perceive these provisions to be either ambiguous or, except for the repeated appearance of 'accident,' redundant. In our view, this is an instance where nontechnical words (except for 'occurrence,' which is defined in the policy) can be given the same meaning they usually receive in ordinary speech. Nor does their context require us to do otherwise." (Footnote omitted.) *Id.* at 694, 340 S.E.2d at 379.

The North Carolina court then went on to conclude that the word "sudden" had to be interpreted as having a *temporal* aspect, and that it could not be read to include releases which occur over a long period of time: "The exception also describes the event—not only in terms of its being unexpected, but in terms of its happening instantaneously or precipitantly." *Id.* at 699, 340 S.E.2d at 382.

Turning to the specific facts before it, the *Waste Mgt.* court first held that while the actual dumping of the waste could not be considered an "occurrence" as defined in the policy because it had been done intentionally, the leakage of the waste did constitute an "occurrence" because it had been both unexpected and unintended. However, the insured was still not entitled to a defense because the pollution exclusion was certainly applicable to the leakage of the waste. Moreover, the court held that the exception to the exclusion did not apply because the underlying *complaint never stated* or implied that the release of the waste had occurred suddenly.

Other state supreme courts have also held that the word "sudden" in the exception must be interpreted as having a temporal aspect. See, *e.g., Upjohn Co. v. New Hampshire Ins. Co.* (1991), 438 Mich. 197, 476 N.W.2d 392; *Lumbermens Mut. Cas. Co. v. Belleville Indus., Inc.* (1990), 407 Mass. 675, 555 N.E.2d 568.

In addition to the plain and ordinary meaning of the word, some courts have placed heavy emphasis upon the fact that "sudden" *would not have any meaning in the exception if it were not interpreted to also mean "quick" or "abrupt."* These courts have recognized that the word "accidental" also means unexpected:

"For the word 'sudden' to have any significant purpose, and not to be surplusage when used generally in conjunction with the word 'accidental,' it must have a temporal aspect to its meaning, and not just the sense of something unexpected. We hold, therefore, that when used in describing a release of pollutants, 'sudden' in conjunction with 'accidental' has a temporal element. The issue is whether the release was sudden. The alternative is that it was gradual. If the release was abrupt and also accidental, there is coverage for an occurrence arising out of the discharge of pollutants." *Id.,* 407 Mass. at 680, 555 N.E.2d at 572.

In addition to state courts, many federal courts have rejected the *Buckeye Union* interpretation of the word "sudden." Of particular interest is a series of decisions of the Sixth Circuit Court of Appeals. In applying state principles of contract interpretation, the circuit court has consistently interpreted the word in the same manner as in *Waste Mgt., supra.* See *Grant–Southern Iron & Metal Co. v. CNA Ins. Co.* (C.A.6, 1990), 905 F.2d 954; *FL Aerospace v. Aetna Cas. & Sur. Co.* (C.A.6, 1990), 897 F.2d 214; *United States Fid. & Guar. Co. v. Star Fire Coals, Inc.* (C.A.6, 1988), 856 F.2d 31.

In the latter decision, the circuit court specifically rejected the argument that the pollution exclusion was ambiguous. To emphasize this point, the court quoted *Am. Motorist Ins. Co. v. Gen. Host Corp.* (D.Kan.1987), 667 F.Supp. 1423, 1429: "We fully agree with the conclusion that this 'language is clear and plain, something only a lawyer's ingenuity could make ambiguous.'" *Star Fire Coals, supra,* at 34. As to the proper definition of the word "sudden," the court then stated:

"We believe the everyday meaning of the term 'sudden' is exactly what this clause means. We do not believe that it is possible to define 'sudden' without reference to a temporal element that joins together conceptually the immediate and the unexpected." *Id.*

Besides the Sixth Circuit, other federal appellate courts have followed this interpretation of the word "sudden." See, *e.g., A. Johnson & Co., Inc. v. Aetna Cas. & Sur. Co.* (C.A.1, 1991), 933 F.2d 66; *New York v. Amro Realty Co.* (C.A.2, 1991), 936 F.2d 1420.

Finally, at least one court has predicted that this court would not follow *Buckeye Union.* In *Borden, Inc. v. Affiliated FM Ins. Co.* (S.D.Ohio 1987), 682 F.Supp. 927, the court reviewed our previous pronouncements concerning

the proper manner of interpreting insurance contracts, and then rejected the *Buckeye Union* analysis on the ground that the exclusion was unambiguous. The court went on to conclude that in its common usage, "sudden" means "happening without previous notice or with very brief notice." *Id.* at 930.

## III

As the *Borden* court correctly noted, this court has consistently held that insurance contracts must be construed in accordance with the same rules as other written contracts. *Universal Underwriters Ins. Co. v. Shuff* (1981), 67 Ohio St.2d 172, 21 O.O.3d 108, 423 N.E.2d 417; *Rhoades v. Equitable Life Assur. Soc. of the United States* (1978), 54 Ohio St.2d 45, 8 O.O.3d 39, 374 N.E.2d 643.

In applying these rules, we have stated that the most critical rule is that which stops this court from rewriting the contract when the intent of the parties is evident, *i.e.*, if the language of the policy's provisions is clear and unambiguous, this court may not "resort to construction of that language." *Karabin v. State Auto. Mut. Ins. Co.* (1984), 10 Ohio St.3d 163, 167, 10 OBR 497, 499, 462 N.E.2d 403, 406. In *Tomlinson v. Skolnik* (1989), 44 Ohio St.3d 11, 12, 540 N.E.2d 716, 717–718, this court expounded upon this rule further:

" * * * Thus, in reviewing an insurance policy, words and phrases used therein 'must be given their natural and commonly accepted meaning, where they in fact possess such meaning, to the end that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined.' " (Quoting *Gomolka v. State Auto. Mut. Ins. Co.* [1982], 70 Ohio St.2d 166, 167–168, 24 O.O.3d 274, 275–276, 436 N.E.2d 1347, 1348.)

In reaching its decision, the *Buckeye Union* court aptly noted that under the case law of this state, an exclusion in an insurance policy will be interpreted as applying only to that which is *clearly* intended to be excluded. See, *e.g., Moorman v. Prudential Ins. Co.* (1983), 4 Ohio St.3d 20, 21, 4 OBR 17, 19, 445 N.E.2d 1122, 1124. However, the rule of strict construction does not permit a court to change the obvious intent of a provision just to impose coverage.

Applying these rules of construction to policy language in this case, this court concludes that the analysis of the exception to the pollution exclusion in *Buckeye Union* is incorrect. Specifically, we hold that the word "sudden" in the exception is *not* synonymous with the word "unexpected" in the typical definition of "occurrence"; instead, the word also has a *temporal* aspect. We reach this conclusion for three reasons.

First, and foremost, like the courts in *Borden* and *Waste Mgt.*, this court finds that the word "sudden," as well as the remainder of the exception, is not ambiguous in the context of the entire exclusion. As it is most commonly used, "sudden" means happening quickly, abruptly, or without prior notice. This is the plain and ordinary meaning of the word, and the context in which it is employed does not indicate that it should be given any other meaning.

Second, we agree with the court in *Belleville Indus.*, *supra*, that unless "sudden" is interpreted to have a temporal aspect, the word does not add anything to the phrase "sudden and accidental." In its common, ordinary use, the word "accidental" means unexpected, as well as unintended. Under the *Buckeye Union* interpretation, "sudden" has the same meaning, and accordingly serves no purpose in the phrase. However, "[i]n construing a written instrument, effect should be given to all of its words, if this can be done by any reasonable interpretation." *Wadsworth Coal Co. v. Silver Creek Mining & Ry. Co.* (1884), 40 Ohio St. 559, paragraph one of the syllabus.

Third, if "sudden" were interpreted to be synonymous with "unexpected," then the entire pollution exclusion would not serve the purpose for which it was clearly included. This is because, under *Buckeye Union*, the pollution exclusion would exclude only bodily injury or property damage that was already excluded by the common definition of "occurrence."

As previously noted, the typical definition of "occurrence" in an insurance policy is an accident that results in injury or damage which the insured did not intend or expect. That definition also states that an accident includes continuous or repeated exposure to a condition. Accordingly, under this definition, it does not matter whether the accident happened quickly or gradually; it would still be considered an "occurrence" if it resulted in bodily injury or property damage.

From this broad coverage, the pollution exclusion then excluded those injuries or damages which resulted from pollution or contamination. In doing so, the exclusion did not distinguish between damages caused by a gradual release or discharge and those damages caused by an abrupt release or discharge.

Under the definition of "sudden" now adopted by this court in the present case, the exception to the exclusion covers only those damages in the latter category, *i.e.*, those caused by an abrupt release. However, if "sudden" were construed so that it could also mean "unexpected" and the exception were construed to be just a restatement of the definition of "occurrence," then the exception would cover both categories, *i.e.*, gradual and abrupt. Because such an interpretation would render the entire exclusion meaningless, it is neither acceptable nor desirable under the normal rules of contract construction.

*Farmers Natl. Bank v. Delaware Ins. Co.* (1911), 83 Ohio St. 309, 94 N.E. 834, paragraph six of the syllabus.

As an aside, we note that public policy also supports our interpretation of the word "sudden." Under the *Buckeye Union* interpretation, only an intentional polluter was excluded from coverage. Such an interpretation might encourage the polluter to be less than diligent, as merely negligent acts would be covered under the policy. See *Waste Mgt., supra,* 315 N.C. at 697–698, 340 S.E.2d at 381. In contrast, today's holding encourages diligence by placing the financial burden for gradual or long-term pollution upon the entity best able to foresee and stop it.

However, we reiterate that the primary basis for our holding is the lack of ambiguity in the wording of the exception. The inclusion of the word "sudden" readily indicates that the exception was not intended to apply to a release that occurred over an extended time. As one court has noted, the intent behind the "sudden and accidental" exception was to *limit* coverage for pollution-related damages to those events in which "damages are caused by sudden pollution incidents involving equipment malfunctions, explosions and the like." *Claussen v. Aetna Cas. & Sur. Co.* (S.D.Ga.1987), 676 F.Supp. 1571, 1580. Any other interpretation conflicts with the clear language and intent of the provision.

## IV

The application of the foregoing holding to the facts of this case is a relatively simple exercise. The first two complaints related to the operation of the Industrial Excess Landfill. Both complaints alleged that over an extended period of time, the insureds had either disposed of or accepted a variety of wastes in the landfill. The third complaint, which applied only to Hybud, stated that the insured had deposited various wastes into the Montville Landfill over an extended period of time.

Clearly, each of the three complaints alleged that the resulting injuries and damages had been caused by the deposited waste. These allegations accordingly brought the causes of action within the scope of the pollution exclusion.

Moreover, a review of the complaints shows that there was never any allegation that the release or discharge of the waste happened abruptly or instantaneously. Thus, the exception to the exclusion was not invoked. Under these circumstances, the three insureds were not entitled under the two policies to a defense from Sphere Drake. Thus, the specific allegations of the complaints precluded coverage for the resulting damage.

## V

In addition to arguing in favor of the *Buckeye Union* interpretation of the pollution exclusion, the insureds contend that Sphere Drake should not have been permitted to raise this issue at the trial level. Specifically, the insureds argue that Sphere Drake waived the exclusion by failing to raise it in its prelitigation letter denying coverage under the policies.

As to this issue, this court notes that as a general proposition, the doctrine of waiver cannot be employed to expand the coverage of a policy. 16B Appleman, Insurance Law and Practice (1981) 579, Section 9090. This rule has been applied when coverage is expressly excluded under the terms of the policy. *Hartory v. State Auto. Mut. Ins. Co.* (1988), 50 Ohio App.3d 1, 552 N.E.2d 223.

As set forth in Appleman, *supra,* the doctrines of waiver and estoppel have been applied to rights of the insurer set forth in the policy. These rights may affect whether coverage will be found in a particular situation but can not define the basic scope of the coverage. An example of this is the company's right to timely notification of a possible claim.

This latter rule is clearly based upon public policy and equity considerations. It is the opinion of this court that these considerations do not warrant the extension of the waiver doctrine to exclusions in the policy. A company should not be obligated to cover a risk for which it did not contract. Therefore, Sphere Drake did not waive its right to invoke the pollution exclusion by not raising it in its denial letter.

## VI

For the foregoing reasons, Sphere Drake was not obligated to provide a defense for the three insureds in the underlying complaints. The judgment of the court of appeals is reversed.

*Judgment reversed.*

MOYER, C.J., SWEENEY, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.

JUDITH A. CHRISTLEY, J., of the Eleventh Appellate District, sitting for HOLMES, J.