OPINION *Page 2 
{¶ 1} Plaintiffs-Appellants Bogner Construction Company and Westfield Insurance Company appeal the February 28, 2008, decision of the Knox County Court of Common Pleas granting summary judgment in favor of Defendant-Appellee United States Fidelity Guaranty Company.
 STATEMENT OF THE FACTS AND CASE {¶ 2} The relevant facts are as follows:
 {¶ 3} On September 6, 1994, Bogner Construction Company ("Bogner") entered into a written construction contract (the "Contract") with the School District for the City of Mount Vernon (the "School Board") to serve as the general contractor for the construction of the Mount Vernon Middle School (the "Middle School"). Bogner was required to furnish all the material, supplies, tools, equipment, and labor necessary for the completion of the Middle School.
 {¶ 4} As set forth in the Contract, Bogner agreed to construct, among other things, a standing seam metal roof system, together with all required flashing, insulation and other related items (the "Roof Project"). The Roof Project included the gymnasium roof ("Gym Roof) and the roof for the main portion of the building ("Main Roof").
 {¶ 5} As the general contractor, Bogner subcontracted the Roof Project to Defendant Field Associates, Inc. ("Field"), through a contract dated October 28, 1994.
 {¶ 6} Field worked on the Project Roof in 1995, completing most of the Gym Roof and portions of the Main Roof in 1995. The roof was completed in June, 1996. Allegedly, leaks persisted ever since the completion of the Roof Project. *Page 3 
 {¶ 7} On or about November 1, 2004, the School Board filed an Arbitration Demand against Bogner and Bogner's bonding company, Ohio Farmers Insurance Company ("Ohio Farmers"), in the arbitration captionedMount Vernon City School District v. Bogner Construction Company, etal ., American Arbitration Association, Case No. 53 110Y0072504 (the "Arbitration"). In the Arbitration, the School Board asserted breach of contract claims against Bogner based on the deficiencies and defects in the construction of the Roof Project and against Ohio Farmers based on the performance bond. Specifically, the School Board asserted claims for breach of contract arising from Bogner's failure to construct and deliver a roof that conformed to the specifications in the construction projects. In its arbitration claims, the School Board alleged, among other things, that the roof leaked in 1995, causing property damage to occur not only to the Project Roof, but also to tangible property other than the roof itself-property which was purchased by the School Board, including ceiling tiles, plastic laminate casework, and other fixtures and furnishings.
 {¶ 8} Upon learning of the arbitration claim, on or about November 1, 2004, Bogner notified its insurance carriers, Westfield Insurance Company ("Westfield") and United States Fidelity Guaranty Company ("USFG") demanding that its insurers provide indemnification and defense against the School Board's claims. The comprehensive general liability ("CGL") policy issued by USFG to Bogner provided coverage from January 1, 1995 to January 1, 1996, while Westfield's coverage period ran from January 1, 1996 to January 1, 1997.
 {¶ 9} By letter dated September 6, 2005, St. Paul Travelers, on behalf of USFG, notified Bogner in writing that it was denying coverage on the School Board's *Page 4 
claims. Specifically, USFG stated that it was denying coverage because, among other things, Bogner had sought coverage for property damage that occurred outside the coverage period, and that the USFG Policy excluded coverage for property damage to property on which Bogner was performing operations.
 {¶ 10} On or about November 7, 2005, the School Board, Bogner, and Westfield entered into a settlement agreement, thereby settling the claims in the Arbitration. Under the terms of the settlement agreement, the School Board agreed to release Bogner from all claims in exchange for the payment of $1,016,604.82. Based upon the settlement, Westfield has subrogated to certain of Bogner's rights.
 {¶ 11} In the instant case, Bogner and Westfield have asserted claims against USFG for breach of contract. Bogner has asserted an additional claim of bad faith based upon USFG's refusal to indemnify and defend Bogner against the claims in the Arbitration.
 {¶ 12} During the course of the litigation, an agreed order was entered by the trial court severing the claims against Field and Ohio Farmers from the claims against USFG for trial purposes.
 {¶ 13} On June 12, 2007, USFG filed a motion for leave to file its summary judgment motion instanter.
 {¶ 14} On June 15, 2007, the trial court granted USFG's motion for leave to file its Motion for Summary Judgment.
 {¶ 15} On July 31, 2007, a jury trial commenced on the claims against Field and Ohio Farmers. Those claims were settled on the second day of the jury trial. Because *Page 5 
the claims against USFG were severed for trial purposes, USFG did not participate in the trial.
 {¶ 16} On August 30, 2007, after receiving an extension of time to file a response so that Plaintiffs-Appellants could depose USFG's claims adjuster, Plaintiffs-Appellants filed their Response to USFG's Motion for Summary Judgment. USFG filed a Reply in Support of its Motion for Summary Judgment, and Plaintiffs-Appellants filed a Surreply.
 {¶ 17} By Judgment Entry filed February 28, 2008, the trial court granted United States Fidelity Guaranty Company's motion for summary judgment.
 {¶ 18} Appellants now appeal, assigning the following error for review:
 ASSIGNMENT OF ERROR {¶ 19} "I. THE TRIAL COURT ERRED IN GRANTING DEFENDANT UNITED STATES FIDELITY GUARANTY COMPANY'S MOTION FOR SUMMARY JUDGMENT."
 "Summary Judgment Standard" {¶ 20} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. Civ. R. 56(C) provides, in pertinent part:
 {¶ 21} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving *Page 6 
party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 22} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall,77 Ohio St.3d 421, 429, 1997-Ohio-259, citing Dresher v. Burt, 75 Ohio St.3d 280,1996-Ohio-107.
 {¶ 23} It is based upon this standard that we review Appellant's assignments of error.
 I. {¶ 24} Appellants argue that the trial court erred in granting summary judgment in favor of Appellee United States Fidelity Guaranty Company. We disagree.
 {¶ 25} Appellants specifically argue that USFG breached its duty to defend or indemnify Appellants, and that its failure to do so was bad faith. *Page 7 
 {¶ 26} An insurance company's duty to defend under a contract of insurance may arise from the face of a complaint if the allegations contained therein "unequivocally bring the action within the policy coverage." Willoughby Hills v. Cincinnati Ins. Co. (1984),9 Ohio St.3d 177, 179. The duty may also arise:
 {¶ 27} "[w]here the insurer's duty to defend is not apparent from the pleadings in the action against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded[.]" Id. at syllabus.
 {¶ 28} In Willoughby Hills, the insurer contracted with the insured to defend "any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent * * *." Id. at 177. Contracts in which this language is absent are distinguishable. Preferred Risk Ins.Co. v. Gill (1987), 30 Ohio St.3d 108, 114. When an insured promises only to defend those claims to which policy coverage applies, the applicability of the duty to defend does not arise solely from the face of the complaint, but must be determined based on the "true facts" underlying the complaint. Id. at 114 and paragraph two of the syllabus. See, also, Mumford v. Interplast, Inc. (1997), 119 Ohio App.3d 724, 735. "Where the true facts are such that the insured's conduct was outside the coverage of the policy, the claim is not one `to which this coverage applies,' and the insurer has no obligation to defend the insured."Preferred Risk Ins. Co. v. Gill, 30 Ohio St.3d at 114.
 {¶ 29} The insurance policy at issue in this case provides, in part:
 {¶ 30} "COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY
 {¶ 31} "1. Insuring Agreement. *Page 8 
 {¶ 32} "a. We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate an "occurrence" and settle any claim or "suit" that may result.
 {¶ 33} "* * *
 {¶ 34} "b. This insurance applies to . . . "property damage" only if:
 {¶ 35} "(1) The . . . "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
 {¶ 36} "(2) The . . . "property damage" occurs during the policy period. (Policy, Section I, A)
 {¶ 37} The Policy also sets forth the following definitions for "property damage":
 {¶ 38} "[Property damage" means
 {¶ 39} "(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom,
 {¶ 40} "(2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period. (Policy, Section V — Definitions).
 {¶ 41} An "occurrence" is defined in Section V of the policy as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured."
 {¶ 42} As noted by the court in Royal Plastics v. State Auto. Mut.Ins. Co., "[t]his language is `clear and plain, something only a lawyer's ingenuity could make *Page 9 
ambiguous.' "Royal Plastics v. State Auto. Mut. Ins. Co. (1994),99 Ohio App.3d 221, 225, citing Hybud Equip. Corp. v. Sphere Drake Ins. Co.,Ltd. (1992), 64 Ohio St.3d 657, 664.
 {¶ 43} Accordingly, this Court must review the allegations in the complaint filed by Appellant in the case sub judice to determine whether any of the claims contained in such complaint potentially or arguably fall within the scope of the insurance policy coverage. Zanco, Inc. v.Michigan Mut. Ins. Co. (1984), 11 Ohio St.3d 114.
 {¶ 44} This Court, in Environmental Exploration Company v. BituminousFire Marine Insurance, Co., (Oct. 16, 2000), Stark App. No. 1999CA00315, a case similar to the one sub judice, held that defective workmanship does not constitute an accident or an "occurrence" under a Commercial General Liability policy:
 {¶ 45} "Clearly, the complaint in the case sub judice * * * alleges faulty workmanship in the construction of the pipeline. * * * in its complaint … Appellants did not seek recovery for damages caused by the ruptured weld. Rather, Appellee Power Resources sought damages for expenses it incurred, including loss of use, lost profits and replacements costs, after the pipeline was later shutdown.
 {¶ 46} " `It is well established that a general commercial liability policy does not cover claims of negligent manufacture." RoyalPlastics, supra. at 226, citing Hamilton Die Cast, Inc. v. United StatesFid. Guar Co. (1975), 508 F.2d 417 (applying Ohio law). See alsoHeile v. Herrmann (Dec. 17, 1999), Hamilton App. No. C-990076, unreported, Rombough v. Angeloro (July 31, 1998), Lake App. No. 97-L-131, unreported, Pursell Const. v. Hawkeye-Security Co. (1999), 596 N .W.2d 67 and McAllister v. Peerless Ins. Co. (1984), 474 A.2d 1033,1036-1037 (holding that a *Page 10 
general comprehensive liability policy does not provide coverage for claims against an insured for the repair of defective workmanship that damaged, as here, only the resulting work product.) Courts, such as the ones cited above, generally have held that there is no coverage under a general comprehensive liability policy since defective workmanship does not constitute an "accident" and since, without an "accident", there can be no occurrence as such term is defined in the insurance policy. For such reason, insurance coverage under general commercial liability policies is restricted to claims of negligent manufacture resulting in an occurrence. Reynolds Plastics, supra.
 {¶ 47} "* * *
 {¶ 48} "Accordingly, since there was, therefore, no property damage caused by an "occurrence", which the general commercial liability insurance policy in this matter defines as an "accident", Appellee was not entitled to coverage under such policy. As was noted by the court inUnited States Fid. Guar. Corp. v. Advance Roofing Supply Co.,Inc. (1989), 788 P.2d 1227, 1233.[W]e recognize that there are some authorities that appear to conclude that the mere showing of faulty work is sufficient to bring a claim for resulting damages (of whatever nature) within policy coverage. In our opinion, these authorities disregard the fundamental nature of a comprehensive general liability policy . . . and ignore the policy requirement that an occurrence be an accident. If the policy is construed as protecting a contractor against mere faulty or defective workmanship, the insurer becomes a guarantor of the insured's performance of the contract, and the policy takes on the attributes of a performance bond. We find these authorities unpersuasive." *Page 11 
 {¶ 49} "We also agree with the court in Heile, supra. that: "In particular, [general commercial liability] policies such as the one here are not intended to insure "business risks"-risks that are the "normal, frequent, or predictable consequences of doing business, and which business management can and should control or manage." Courts generally conclude that the policies are intended to insure the risks of an insured causing damage to other persons and their property, but that the policies are not intended to insure the risks of an insured causing damage to the insured's own work. In other words, the policies do not insure an insured's work itself; rather, the policies generally insure consequential risks that stem from the insured's work."
 {¶ 50} Like the policy in Environmental, supra, the Bogner insurance policy is occurrence-based, limiting coverage to property damages occurring within the policy period. See C.V. Perry Co. v. W.Jefferson (1996), 110 Ohio App.3d 23, 26, 673 N.E.2d 613.
 {¶ 51} Having found that there was no "occurrence" within the meaning of the policy, we find that there was no coverage under the general commercial liability policy issued by USFG. We therefore find it is unnecessary to determine whether any of the exclusions to coverage contained in such policy apply. *Page 12 
 {¶ 52} Based on the foregoing, we find Appellants' claims were not arguably or potentially covered by the CGL in the case sub judice, and that Appellees are entitled to summary judgment in their favor.
 {¶ 53} The judgment of the Court of Common Pleas, of Knox County, Ohio, is affirmed.
 Edwards, J., concurs. Hoffman, P. J., concurs separately. *Page 13 
 {¶ 54} I concur in judgment only.
 {¶ 55} I respectfully disagree with the majority's conclusion there was no "occurrence". Although damage to the work product itself resulting from negligent workmanship may not qualify as an "occurrence", when the defective workmanship results in collateral damage, I find such constitutes an "occurrence" under the terms of the commercial general liability policy at issue.
 {¶ 56} This distinguishes the case sub judice from ourEnvironmental Exploration Co. case.[1] As noted by the majority herein, in Environmental Exploration Co., the appellants did not seek recovery for damages caused by the ruptured weld. In EnvironmentalExploration Co., we specifically stated there was no claim the defective workmanship on the pipeline caused damage to any property other than the work product, Id. at 19. Such is not the situation presented in the instant case.
[1] Upon revisiting Environmental Exploration Co., I am less confident now, than I was then, the blowing of the weld constituted an "occurrence". *Page 14 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Knox County, Ohio, is affirmed. Costs assessed to Appellant. *Page 1