WESTFIELD INSURANCE COMPANY *v.* CUSTOM AGRI SYSTEMS, INC.

[Cite as *Westfield Ins. Co. v. Custom Agri Sys., Inc.,*

**133 Ohio St.3d 476, 2012-Ohio-4712.]**

*Insurance—Claims for defective workmanship not covered by commercial general liability policy.*

(No. 2011-1486—Submitted April 4, 2012—Decided October 16, 2012.)

CERTIFIED by the United States Court of Appeals

for the Sixth Circuit, No. 11-3213.

_____

SYLLABUS OF THE COURT

Claims of defective construction or workmanship brought by a property owner are not claims for "property damage" caused by an "occurrence" under a commercial general liability policy.

_____

O'CONNOR, C.J.

BACKGROUND

{¶ 1} This cause is here on the certification of state-law questions from the United States Court of Appeals for the Sixth Circuit. Thus the facts of this case are taken from the order of certification.

{¶ 2} Younglove Construction, L.L.C., entered into a contract with PSD Development, L.L.C., for the construction of a feed-manufacturing plant in Sandusky, Ohio. When PSD withheld payment, Younglove brought this diversity suit against PSD and three other defendants, seeking damages for breach of contract and related causes of action. In its answer, PSD alleged that it had sustained damages as a result of defects in a steel grain bin. The bin had been constructed by respondent, Custom Agri Systems, Inc., as a subcontractor, and

Younglove filed a third-party complaint against Custom for contribution and indemnity. Custom filed similar third-party complaints against the subcontractors it had used to construct the bin and turned to its insurer, petitioner Westfield Insurance Company, to defend and indemnify it in the litigation. Westfield intervened in order to pursue a judgment declaring that it had no such duty under the terms of its commercial general liability ("CGL") policy with Custom.

{¶ 3} Custom was being sued under two general theories: defective construction and consequential damages resulting from the defective construction. Westfield argued that none of the claims against Custom sought compensation for "property damage" caused by an "occurrence" and therefore that none of the claims were covered under the CGL policy. In the alternative, Westfield argued that even if the claims were for property damage caused by an occurrence, they were removed from coverage by an exclusion in the policy.

{¶ 4} Westfield and Custom filed cross-motions for summary judgment. The parties agreed that the case was governed by Ohio law, and the United States District Court for the Northern District of Ohio acknowledged that it was an open question under Ohio law whether defective-construction claims fall under the auspices of a CGL policy. Rather than decide the issue, the district court assumed that Custom's policy covered defective construction and went on to find that the exclusion removed such claims from coverage. After reconsideration of an earlier order, the district court granted summary judgment for Westfield. *Younglove Constr., L.L.C. v. PSD Dev., L.L.C.,* 767 F.Supp.2d 820 (N.D.Ohio 2011).

{¶ 5} Custom appealed the summary judgment in favor of Westfield. Westfield moved to certify two questions of state law to this court. Custom did not oppose the motion.

{¶ 6} In a divided decision, the Sixth Circuit determined that the question of whether defective construction or workmanship constitutes an "occurrence" within the meaning of a CGL policy in Ohio might be determinative

of the action in federal court. Furthermore, the Sixth Circuit found no controlling precedent on the issue in our decisions. For those reasons, the Sixth Circuit certified the following two questions of state law to this court pursuant to S.Ct.Prac.R. 18.1:

> (1) Are claims of defective construction/workmanship brought by a property owner claims for "property damage" caused by an "occurrence" under a commercial general liability policy?
>
> (2) If such claims are considered "property damage" caused by an "occurrence," does the contractual liability exclusion in the commercial general liability policy preclude coverage for claims for defective construction/workmanship?

{¶ 7} We agreed to answer both questions. *Westfield Ins. Co. v. Custom Agri Sys., Inc.*, 130 Ohio St.3d 1415, 2011-Ohio-5605, 956 N.E.2d 307.

## ANALYSIS

### *First Certified State-Law Question*

{¶ 8} The underlying claim is one of defective construction of or workmanship on the steel grain bin by Custom. The present action is one of contract interpretation, as the issue is whether the claims of defective construction or workmanship against Custom fall within the insurance policy issued by Westfield.

> When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.* (1999), 86 Ohio St.3d 270, 273, 714 N.E.2d 898, citing *Employers' Liab. Assur. Corp. v. Roehm* (1919), 99

Ohio St. 343, 124 N.E. 223, syllabus. See, also, Section 28, Article II, Ohio Constitution. We examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. Id. As a matter of law, a contract is unambiguous if it can be given a definite legal meaning. *Gulf Ins. Co. v. Burns Motors, Inc.* (Tex.2000), 22 S.W.3d 417, 423.

*Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11.

{¶ 9} The insurance policy here provides:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

* * *

SECTION I—COVERAGES
COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

* * *

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

* * *

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;"

* * *

SECTION V—DEFINITIONS

* * *

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

* * *

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

{¶ 10} CGL policies are

not intended to protect business owners against every risk of operating a business. In particular, [these] policies \* \* \* are not intended to insure "business risks" [see generally Franco, *Insurance Coverage for Faulty Workmanship Claims under Commercial General Liability Policies*, 30 Tort & Ins.L.J. 785 (1994)]—risks that are the " 'normal, frequent, or predictable consequences of doing business, and which business management can and should control or manage.' " [*Columbia Mut. Ins. Co. v. Schauf*, 967 S.W.2d 74, 77 (Mo.1998), quoting James T. Hendrick and James P. Wiezel, *The New Commercial General Liability Forms—An Introduction and Critique,* Fedn. of Ins. & Corporate Counsel Quarterly 319, 322 (Summer 1986).] Courts generally conclude that the policies are intended to insure the risks of an insured causing damage to other persons and their property, but

> that the policies are not intended to insure the risks of an insured causing damage to the insured's own work. [*Id*.] In other words, the policies do not insure an insured's work itself; rather, the policies generally insure consequential risks that stem from the insured's work.

*Heile v. Herrmann*, 136 Ohio App.3d 351, 353, 736 N.E.2d 566 (1st Dist.1999). *See also ACUITY v. Burd & Smith Constr., Inc.*, 2006 ND 187, 721 N.W.2d 33, ¶ 12 (holding that a claim of faulty workmanship that results in damage to property other than the work product is an accident and that "a CGL policy is not intended to insure business risks that are the normal, frequent, or predictable consequences of doing business and which businesses can control and manage. * * * A CGL policy does not insure the insured's work itself; rather, it insures consequential damages that stem from that work. * * * As a result, a CGL policy may provide coverage for claims arising out of tort, breaches of contract, and statutory liabilities as long as the requisite accidental occurrence and property damage are present"); *Century Indemn. Co. v. Golden Hills Builders, Inc.*, 348 S.C. 559, 565-566, 561 S.E.2d 355 (2002) (holding that under a CGL policy, an insurer had no duty to defend its insured in an action resulting from faulty workmanship and that a CGL policy " 'is not intended to insure business risks, *i.e.*, risks that are the normal, frequent, or predictable consequences of doing business, and which business management can and should control or manage.' [Rowland H. Long, *The Law of Liability Insurance*] § 10.01[1]. Specifically, 'the policies do not insure [an insured's] work itself, but rather, they generally insure consequential risks that stem from that work.' *Id.*").

{¶ 11} Here, all of the claims against which Westfield is being asked to defend and indemnify Custom relate to Custom's work itself, i.e., the alleged defective construction of and workmanship on the steel grain bin. Although it is a

widely accepted principle that such claims are not covered by CGL policies, our inquiry cannot and must not end there. The issue we must decide is whether the CGL policy in the present case provides coverage to Custom for its alleged defective construction of and workmanship on the steel grain bin. Specifically, we must decide whether Custom's alleged defective construction of and workmanship on the steel grain bin constitute property damage caused by an "occurrence."

{¶ 12} In the CGL policy here, the word "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The word "accident," however, is not defined in the CGL policy. Therefore, "accident" must be given its "natural and commonly accepted meaning." *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 167-168, 436 N.E.2d 1347 (1982).

{¶ 13} We have defined "accidental" as "unexpected, as well as unintended." *Hybud Equip. Corp. v. Sphere Drake Ins. Co.*, 64 Ohio St.3d 657, 666, 597 N.E.2d 1096 (1992). In defining the ordinary meaning of "accident" in the context of a CGL policy that, too, did not include a definition of the word, our sister court in Kentucky held, "Inherent in the plain meaning of 'accident' is the doctrine of fortuity. Indeed, '[t]he fortuity principle is central to the notion of what constitutes insurance * * *.' " *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 74 (Ky.2010), quoting Corpus Juris Secundum, Insurance, Section 1235 (2009). Similarly, the Eleventh District has held:

> " 'Insurance coverage is bottomed on the concept of fortuity. Applying this rule in the construction context, truly accidental property damage generally is covered because such claims and risks fit within the statistical abstract. Conversely, faulty workmanship claims generally are not covered, except for

8

their consequential damages, because they are not fortuitous. In short, contractors' "business risks" are not covered by insurance, but derivative damages are. *The key issues are whether the contractor controlled the process leading to the damages and whether the damages were anticipated.*

" 'Coverage analysis largely turns on the damages sought. If the damages are for the insured's own work, there is generally no coverage. If the damages are consequential and derive from the work the insured performed, coverage generally will lie. The underwriting intent is to exclude coverage for the contractor's business risks, but provide coverage for unanticipated consequential damages.' " (Emphasis added.) [*Indiana Ins. Co. v. Alloyd Insulation Co.*, 2d Dist. No. 18979, 2002-Ohio-3916] ¶ 27–28, quoting Franco, Insurance Coverage for Faulty Workmanship Claims Under Commercial General Liability Policies (1994), 30 Tort and Ins. L.J. 785, 785-787.

*JTO, Inc. v. State Auto Mut. Ins. Co.*, 194 Ohio App.3d 319, 2011-Ohio-1452, 956 N.E.2d 328, ¶ 32–33 (11th Dist.).

{¶ 14} We agree that claims for faulty workmanship, such as the one in the present case, are not fortuitous in the context of a CGL policy like the one here. In keeping with the spirit of fortuity that is fundamental to insurance coverage, we hold that the CGL policy does not provide coverage to Custom for its alleged defective construction of and workmanship on the steel grain bin. Our holding is consistent with the majority of Ohio courts that have denied coverage for this type of claim. The majority view is that claims of defective construction or workmanship are not claims for "property damage" caused by an "occurrence" under a CGL policy. *E.g.*, *Bogner Constr. Co. v. Field & Assocs.*, 5th Dist. No.

08-CA-11, 2009-Ohio-116, at ¶ 51 and 44 (holding that there was no coverage because "there was no 'occurrence' within the meaning of the policy" because "defective workmanship does not constitute an accident or an 'occurrence' under a Commercial General Liability policy"); *Paramount Parks, Inc. v. Admiral Ins. Co.*, 12th Dist. No. CA2007-05-0666, 2008-Ohio-1351, at ¶ 25 (holding that "a CGL policy such as the one at issue here does not insure against claims for defective or negligent workmanship or construction because defective workmanship does not constitute an 'accident,' and therefore claims for defective or negligent workmanship do not constitute an occurrence under the policy"); *Westfield Ins. Co. v. Coastal Group, Inc.*, 9th Dist. No. 05CA008664, 2006-Ohio-153, at ¶ 9-10 (holding that a contractor's delay in remedying deficiencies in its work is a claim for economic losses and "not an 'accident' and therefore, not an 'occurrence' "); *Heile v. Herrmann*, 136 Ohio App.3d 351, 353-354, 736 N.E.2d 566 (1st Dist.1999) (holding that "courts in Ohio, as well as the majority of courts in jurisdictions throughout the country, have concluded that defective workmanship does not constitute an 'occurrence' in [CGL] policies" [footnotes omitted]).

{¶ 15} In *Bogner*, the insurance policy at issue defined "occurrence" as " 'an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured.' " *Bogner*, 2009-Ohio-116, at ¶ 41. The Fifth Appellate District held:

> "[T]here is no coverage under a general comprehensive liability policy since defective workmanship does not constitute an 'accident' and since, without an 'accident,' there can be no occurrence as such term is defined in the insurance policy. * * *
>
> "* * *

> "Accordingly, since there was, therefore, no property damage caused by an 'occurrence,' which the general commercial liability insurance policy in this matter defines as an 'accident,' [the insured] was not entitled to coverage under such policy."

*Id*. at ¶ 46–48, quoting *Environmental Exploration Co. v. Bituminous Fire & Marine Ins., Co.*, Stark App. No. 1999CA00315, 2000 WL 1608908 at *6 (Oct. 16, 2000).

{¶ **16**} Similarly, in *Essex Ins. Co. v. Holder*, 370 Ark. 465, 261 S.W.3d 456 (2008), the Arkansas Supreme Court reached the same result. The issue was "whether defective construction or workmanship is an 'accident' and, therefore, an 'occurrence' within the meaning of commercial general liability insurance policies." *Id*. at 457. In *Essex*, a couple had contracted with a builder to build a home. Before the home was completed, the couple sued the builder, seeking damages for breach of contract, breach of an express warranty, breach of implied warranties, and negligence. They alleged that they had suffered damages from the builder's delays, employment of incompetent subcontractors, and defective or incomplete construction. The builder then demanded that Essex Insurance Company defend him in the action under his CGL policies.

{¶ **17**} Essex asserted that there was no coverage under any of the CGL policies for the alleged damages. The federal district court certified this question of Arkansas law to the Arkansas Supreme Court to decide.

{¶ **18**} The Arkansas court held that "the contractor's obligation to repair or replace its subcontractor's defective workmanship could not be deemed unexpected on the part of the contractor, and therefore, failed to constitute an 'event' for which coverage existed under the policy." *Id*. at 459, citing *Nabholz Constr. Corp. v. St. Paul Fire & Marine Ins. Co.*, 354 F.Supp.2d 917, 921-922 (E.D.Ark.2005). Therefore, the Arkansas Supreme Court held that "defective

workmanship standing alone—resulting in damages only to the work product itself—is not an occurrence under a CGL policy." *Id.* And as the court pointed out, to protect itself from faulty performance by a subcontractor, a contractor can require the subcontractor to provide a performance bond.

{¶ 19} Based on our review of the purpose of a CGL policy and of the majority view of our appellate courts that have addressed this issue and the view of our sister court in Arkansas, we hold that claims of defective construction or workmanship brought by a property owner are not claims for "property damage" caused by an "occurrence" under a commercial general liability policy such as the one in the present case.

### *Second Certified State-Law Question*

{¶ 20} Because we answered the first question in the negative, the second certified state-law question is moot.

### CONCLUSION

{¶ 21} We answer the first certified state-law question in the negative and hold that claims of defective construction or workmanship brought by a property owner are not claims for "property damage" caused by an "occurrence" under a commercial general liability policy. We do not reach the second certified state-law question, as it is unnecessary to do so.

So answered.

LUNDBERG STRATTON, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

O'DONNELL, J., concurs in judgment only.

PFEIFER, J., dissents.

_____

**PFEIFER, J., dissenting.**

{¶ 22} I dissent, first, because I believe this court should not be answering this question at this time. The question the majority leaves unanswered is the

only question truly at issue in this case. Second, I dissent from the majority's response to the first certified question of law.

## The Wrong Question

{¶ 23} The district court determined that it did not have to answer the question of whether claims of defective construction/workmanship are claims created by an "occurrence" under a commercial general liability ("CGL") policy. Instead, it answered the question it deemed dispositive—whether the policy's contractual liability exclusion precluded coverage for claims for defective construction/workmanship in this case. Even at the trial level, Westfield Insurance Company sought certification to this court for a determination of the two issues it raises here, but the district court denied the motion. I agree with the dissenting judge of the court of appeals—Westfield's revival of the motion to certify at the appellate level was an end run to evade abuse-of-discretion review of the district court's denial of the motion for certification. As Judge McKeague wrote below, "the proper course would have been for Westfield to appeal the district court's denial of the motion to certify."

{¶ 24} Custom Agri Systems appealed the district court's determinative ruling on the policy exclusion, but Westfield again sought certification to this court—this time from the court of appeals—on the broader issue of whether defective workmanship constitutes an "occurrence" under a CGL policy. The district court had concluded that it was unnecessary to even meet that question, and as Judge McKeague noted, "there is absolutely no reason to certify the first question at this stage of the litigation." If the appellate court first overruled the district court on the contractual exclusion issue, it might then become appropriate for the panel, or the district court on remand, to certify the question to this court. Until then, Judge McKeague wrote, the circuit court "should not be in the business of certifying questions that need not be resolved."

**{¶ 25}** The first certified question is a big question, and an open question, which Westfield really wants answered. But its desire to resolve an issue that must arise with its policyholders fairly often does not create in this court an obligation to answer it in this case. This is not "Dear Abby."

The Wrong Answer

**{¶ 26}** I also dissent from the majority's response to the first certified question, "Are claims of defective construction/workmanship brought by a property owner claims for 'property damage' created by an 'occurrence' under a commercial general liability policy?" The majority answers in the negative. I would answer that if the defective construction is accidental, it constitutes an "occurrence" under a CGL policy. "[A] strong recent trend in the case law interprets the term 'occurrence' to encompass unanticipated damage to nondefective property resulting from poor workmanship." *Greystone Constr., Inc. v. Natl. Fire & Marine Ins. Co.*, 661 F.3d 1272, 1282 (10th Cir.2011). That is not to say that an exclusion in the policy might not relieve the insurer of the duty to provide coverage.

**{¶ 27}** The majority holding is too broad for the facts of this case. Determining that defective workmanship cannot result in a covered occurrence under a CGL policy forecloses too many other potential cases. The question posed by the federal court concerns the initial grant of coverage; it does not relate to any possible exclusions. In *Zanco, Inc. v. Michigan Mut. Ins. Co.*, 11 Ohio St.3d 114, 464 N.E.2d 513 (1984), this court faced a similar CGL policy and a similar set of facts. In *Zanco*, condominium owners alleged that the contractor, Zanco, breached its duty to construct the condominiums in a workmanlike manner, thereby causing defects in the structure. Zanco did not deny the defects, but rather claimed that the fault lay with its suppliers, who allegedly furnished Zanco with defective materials. Zanco sought coverage under its CGL insurance contract. The court looked to the entire contract to determine the issue. The court

14

did not expressly rule on the issue of whether the damage to the condominiums was "property damage" caused by an "occurrence," but did indicate support for the idea that at that threshold level, there was coverage but that the policy *exclusions* were ultimately determinative:

> Zanco maintains, and the court of appeals agreed, that the counterclaim alleged "property damage" caused by an "occurrence" as those terms are defined in the policies. Although a perfectly credible argument can be made that the allegations in the Pinecrest counterclaim were within these initial provisions for coverage, the insurance contracts must be examined in their entirety to determine if there are any applicable exceptions to their coverage. A careful review of the exclusions contained in the policies reveals that Michigan Mutual owed no duty to defend under these facts.

(Footnote omitted.) *Id.* at 115-116.

{¶ 28} Again, the question we are answering does not consider exclusions—it deals with the initial grant of coverage. Under the policy at issue, the insurance covers " 'property damage' * * * caused by an 'occurrence' that takes place in the 'coverage territory.' " The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The key question is whether defective workmanship can be considered accidental. Given this court's definition of "accidental," I would hold that the initial grant of coverage would apply in certain instances of defective workmanship, those in which the damage was not intentional.

{¶ 29} This court's definition of "accidental" is broad, covering unexpected, unintentional happenings:

In *Hybud Equip. Corp. v. Sphere Drake Ins. Co.* (1992), 64 Ohio St.3d 657, 666, 597 N.E.2d 1096, we stated that "[i]n its common, ordinary use, the word 'accidental' means unexpected, *as well as unintended*." (Emphasis added.) We similarly recognized in *Gearing v. Nationwide Ins. Co.* (1996), 76 Ohio St.3d 34, 38, 665 N.E.2d 1115, that "inherent in a policy's definition of 'occurrence' is the concept of an incident of an accidental, *as opposed to an intentional, nature*." (Emphasis altered.) Furthermore, in *Rothman v. Metro. Cas. Ins. Co.* (1938), 134 Ohio St. 241, 247, 12 O.O. 50, 16 N.E.2d 417, this court acknowledged that " 'accident,' as the term is ordinarily used, is a more comprehensive term than 'negligence,' and in its common signification means an unexpected happening without intention or design." Id. at 247, 12 O.O. 50, 16 N.E.2d 417, citing *Commonwealth Cas. Co. v. Headers* (1928), 118 Ohio St. 429, 161 N.E. 278. Thus, we held in *Rothman* that absent contrary language in a policy, "if the injury was not intentionally caused, then it was accidentally suffered." Id. at 246, 12 O.O. 50, 16 N.E.2d 417.

*Safeco Ins. Co. of Am. v. White*, 122 Ohio St.3d 562, 2009-Ohio-3718, 913 N.E.2d 426, ¶ 21.

{¶ 30} Our first-level analysis should thus focus upon whether the defective workmanship was intentionally caused. In *Sheehan Constr. Co., Inc. v. Continental Cas. Co.*, 935 N.E.2d 160, 170 (Ind.2010), *modified on rehearing,* 938 N.E.2d 685 (Ind.2010), the Supreme Court of Indiana established that intent is the key to determining whether a construction defect is accidental:

Implicit in the meaning of "accident" is the lack of intentionality. * * * The question presented is whether faulty workmanship is an accident within the meaning of a standard CGL policy. In our view the answer depends on the facts of the case. For example, faulty workmanship that is intentional from the viewpoint of the insured cannot be an "accident" or an "occurrence." *See Lamar Homes* [*Inc. v. Mid-Continent Cas. Co.,*] 242 S.W.3d [1] at 8–9 [(Tex.2007)]. On the other hand if the faulty workmanship is "unexpected" and "without intention or design" and thus not foreseeable from the viewpoint of the insured, then it is an accident within the meaning of a CGL policy.

{¶ 31} A deliberate act—such as performing construction work—can have accidental consequences. "[A] deliberate act, performed negligently, is an accident if the effect is not the intended or expected result; that is, the result would have been different had the deliberate act been performed correctly." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.,* 242 S.W.3d 1, 8 (Tex.2007).

{¶ 32} The majority relies on an Arkansas case and some Ohio appellate cases that seem to say that defective workmanship that results in damage only to the work product itself cannot constitute an occurrence. But the character of the damage is immaterial in regard to the threshold question of whether faulty construction is an occurrence: "The CGL policy * * * does not define an 'occurrence' in terms of the ownership or character of the property damaged by the act or event. Rather, the policy asks whether the injury was intended or fortuitous, that is, whether the injury was an accident." *Id.* Cases that focus on the type of damage resulting from faulty construction do not truly address the issue of whether there has been an "occurrence":

The reasoning found in these cases simultaneously fails to evaluate the policy as a whole and collapses what should be a separate and specific analysis of the policy exclusions into the coverage grant analysis of the term "occurrence." By focusing on the kind of property damage alleged to determine whether there has been an "occurrence," these decisions improperly apply the policy *exclusions* to determine whether there has been an "occurrence."

(Emphasis sic; footnote omitted.) Clifford J. Shapiro, *Point/Counterpoint: Inadvertent Construction Defects Are an "Occurrence" under CGL Policies*, 22 Construction Lawyer 13, 17 (Spring 2002).

{¶ 33} The better-reasoned Ohio appellate cases recognize that a CGL policy is not the equivalent of a performance bond but also recognize that

the rationale for [that] proposition is not that the allegations of negligent construction or design practices do not fall within the broad coverage for property damage caused by an occurrence, but that * * * the damages resulting from such practices are usually excluded from coverage by the standard exclusions found in such policies.

*Erie Ins. Exchange v. Colony Dev. Corp.*, 136 Ohio App.3d 406, 414, 736 N.E.2d 941 (1999). In *Erie Ins. Exchange v. Colony Dev. Corp.*, 136 Ohio App.3d 419, 422, 736 N.E.2d 950 (2000), fn. 1, the court pointed out the illogic of basing a determination of whether a defect is an occurrence on what property was damaged:

The logical basis for the distinction between damage to the work itself (not caused by an occurrence) and damage to collateral property (caused by an occurrence) is less than clear. Both types of property damage are caused by the same thing—negligent or defective work. One type of damage is no more accidental than the other. * * * [T]he basis for the distinction is not found in the definition of occurrence but by application of the standard "work performed" and "work product" exclusions found in a [c]ommercial general liability insurance policy.

**{¶ 34}** As pointed out by the court in *Lee Builders, Inc. v. Farm Bur. Mut. Ins. Co.*, 281 Kan. 844, 856, 137 P.3d 486 (2006), exclusions for work product and work performed exist because the initial broad grant of coverage for occurrences includes damage caused by accidental defective workmanship:

"A court need only ask why the CGL policy includes an exclusion for property damage to the insured's own work and that of its subcontractors to understand that it would be nonsensical for the policy to include such a provision if this kind of property damage could never be caused by an 'occurrence' in the first place. A court need only ask *why* the CGL policy specifically includes an express exception to the 'your work' exclusion for property damage arising out of the work of a subcontractor to understand that this kind of property damage must be included in the broad scope of the term 'occurrence' in the coverage grant, and that the coverage determination for this kind of property damage must be made based on the construction-specific policy exclusions." (Emphasis added.)

*Id.*, quoting Clifford J. Shapiro, *The Good, the Bad, and the Ugly: New State Supreme Court Decisions Address Whether an Inadvertent Construction Defect Is an "Occurrence" under CGL Policies,* 25 Constr. Law. 9, 12 (Summer 2005).

{¶ 35} If coverage were inappropriate in this case, it would be by operation of the policy's exclusions, "not because a loss actionable only in contract can never be the result of an 'occurrence' within the meaning of the CGL's initial grant of coverage. This distinction is sometimes overlooked, and has resulted in some regrettably overbroad generalizations about CGL policies * * *." *Am. Family Mut. Ins. Co. v. Am. Girl, Inc.,* 268 Wis.2d 16, 2004 WI 2, 673 N.W.2d 65, ¶ 39.

## Conclusion

{¶ 36} The majority in this case makes an overbroad generalization about CGL policies in Ohio. Answering a question it should not even be answering, the majority misinterprets the contract and misapplies Ohio law, leaving us on the wrong side of the divide of states that have considered this question. Accordingly, I dissent.

---

Davis & Young and Richard M. Garner, for petitioner.

---