[Cite as *Cincinnati Ins. Co. v. Dorsey Reconditioning, Inc.*, 2011-Ohio-1499.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE CINCINNATI INSURANCE CO. | JUDGES: |
| | Hon. Sheila G. Farmer, P.J. |
| Plaintiff-Appellant | Hon. W. Scott Gwin, J. |
| | Hon. Patricia A. Delaney, J. |
| -vs- | |
| DORSEY RECONDITIONING, INC., ET AL. | Case No. 10-CA-11 |
| Defendants-Appellees | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Court of Common Pleas,
                                  Case No. 2008CI0534

JUDGMENT:                         Reversed

DATE OF JUDGMENT ENTRY:           March 25, 2011

APPEARANCES:

For Plaintiff-Appellant                   For Defendant-Appellee

RICHARD M. GARNER                         DANIEL F. GOURASH
1200 Fifth Third Center                   ROBERT D. ANDERLE
600 Superior Avenue, East                 ERIC D. BAKER
Cleveland, OH  44114                      26600 Detroit Road
                                          Cleveland, OH  44145-2397

*Farmer, J.*

{¶1}    In 2002, Water Management Services, Inc. purchased pipe from appellee, Clow Water Systems Company, for its water utility project in Florida.   Appellee subcontracted with Dorsey Reconditioning, Inc. to provide surface preparation and primer for the pipe.  Consolidated Coatings, Inc. provided the intermediate and finish coats.

{¶2}    In 2005, Water Management discovered that the primer, intermediate, and finish coats were flaking off of some sections of the pipe, exposing the pipe to corrosion. Water Management demanded that appellee fix the situation.  Appellee refused.

{¶3}    On August 21, 2006, Waste Management filed a complaint in Florida against appellee and others, claiming breach of contract, breach of implied warranty of fitness for particular purpose, and breach of implied warranty of merchantability.  The litigation was settled for $800,000.00, with appellee responsible for $407,500.00.

{¶4}    Appellee then demanded that Dorsey reimburse appellee $407,500.00 plus all of its litigation expenses related to the Florida litigation.  Dorsey was insured under a commercial general liability policy, policy number CAP 544 22 78, issued by appellant, Cincinnati Insurance Company.  Appellant denied coverage.

{¶5}    On August 18, 2008, appellant filed a declaratory judgment action against appellee and Dorsey, seeking a declaration on whether coverage existed under the policy.  Appellee filed a counterclaim against appellant and a cross-claim against Dorsey.  Thereafter, appellee and Dorsey entered into a consent judgment entry resolving the cross-claim in the amount of $597,905.00 and assigning appellee Dorsey's rights under the policy.

{¶6} Appellee filed an amended counterclaim against appellant, claiming seven causes of action. Both parties filed motions for summary judgment. By judgment entry filed August 5, 2010, the trial court denied appellant's motion and granted appellee's motion as to its counterclaim.

{¶7} Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:

I

{¶8} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DECLARING THAT APPELLANT THE CINCINNATI INSURANCE COMPANY MUST PROVIDE INSURANCE COVERAGE FOR BREACH OF CONTRACT CLAIMS IN A CONSTRUCTION DEFECT CASE."

I

{¶9} Appellant claims the trial court erred in granting summary judgment to appellee and finding that insurance coverage existed under appellee's commercial general liability policy with appellant. We agree.

{¶10} Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 448, 1996-Ohio-211:

{¶11} "Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is

adverse to the party against whom the motion for summary judgment is made. *State ex. rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274."

{¶12} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35.

{¶13} It is appellant's position that there is no insurance coverage for Dorsey because of its faulty application of the primer to the pipe which resulted in a lateral cohesive splitting and adhesive failure between the different layers of coatings and between the primer and the pipe. It is claimed that Dorsey failed to properly clean and sandblast the pipe to allow the primer to stick: See, Exhibit 5, Mark 10 Resource Group, Inc. Report at 90, 94.

{¶14} Appellant argues Section I(A) of the policy excludes coverage (Coverage A). We note the parties appear to agree there is no coverage for appellee's cost for the remediation of Dorsey's work, but argue over the issue of coverage for the damage to the pipe and other coatings because of Dorsey's negligent application of the primer to the pipe. Appellee's Brief at 13.

{¶15} Coverage A includes coverage for "Bodily Injury and Property Damage Liability" that an insured becomes legally obligated to pay. See, Section I(A)(1)(a). "Bodily injury" and "property damage" are defined in the policy under Section I(A)(1)(b) and (c) as follows:

{¶16} "b. This insurance applies to 'bodily injury' and 'property damage' only if:

{¶17} "(1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory';

{¶18} "(2) The 'bodily injury' or 'property damage' occurs during the policy period; and

{¶19} "(3) Prior to the 'coverage term' in which 'bodily injury' or 'property damage' occurs, you did not know, per Paragraph **1.d.** below, that the 'bodily injury' or 'property damage' had occurred or had begun to occur, in whole or in part.

{¶20} "c. 'Bodily injury' or 'property damage' which:

{¶21} "(1) Occurs during the 'coverage term', and

{¶22} "(2) Was not, prior to the 'coverage term', known by you, per Paragraph **1.d.** below, to have occurred;

{¶23} "includes any continuation, change or resumption of that 'bodily injury' or 'property damage' after the end of the 'coverage term' in which it first became known by you."

{¶24} Therefore, for coverage to exist, there must be bodily injury or property damage and an occurrence. Appellee argues the "occurrence" is defined as "an accident, including the continuous or repeated exposure to substantially the same general harmful conditions," and brought its claim against Dorsey in negligence. See, Appellee's Brief at 11; Definitions, Section V(16).

{¶25} Within the policy at Section I(A)(2) are the following applicable exclusions:

{¶26} "**b. Contractual Liability**

{¶27} " 'Bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

{¶28} "(1) That the insured would have in the absence of the contract or agreement; or

{¶29} "(2) Assumed in a contract or agreement that is an 'insured contract', provided the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement. When a claim for such 'bodily injury' or 'property damage' is made, we will defend that claim provided the insured has assumed the obligation to defend such claim in the 'insured contract'. Such defense payments will not reduce the limits of insurance.

{¶30} "**k. Damages to your Product**

{¶31} " 'Property damage' to 'your product' arising out of it or any part of it.

{¶32} "**l. Damage to Your Work**

{¶33} " 'Property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard'.

{¶34} "This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

{¶35} "**m. Damage to Impaired Property or Property Not Physically Injured**

{¶36} " 'Property damage' to 'impaired property' or property that has not been physically injured, arising out of:

{¶37} "(1) A defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'; or

{¶38} "(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

{¶39} "This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to 'your product' or 'your work' after it has been put to its intended use."

{¶40} From the language of the insurance policy, there must be an occurrence and property damage. In appellee's September 29, 2008 cross-claim against Dorsey, appellee alleged the following in pertinent part:

{¶41} "6. Clow is in the business of producing and selling ductile iron pipe. In or about 2002, WMSI contracted with Clow to supply primed pipe for the pipeline project.

{¶42} "7. Clow contracted with Dorsey to perform the surface preparation of the pipe and apply the primer consistent with the specifications for the pipeline project.

{¶43} "9. After installation of the pipeline was complete, the primer as well as the intermediate and finish coats on certain pieces of pipe began to crack, split, and in some instances completely fall off the pipe. This splitting, cracking and loss of the top coats continued to the point that WMSI notified Clow that a substantial number of sections of the pipeline were in need of repair due to the absence of large portions of the top coats.

{¶44} "17. Dorsey was negligent in failing to use reasonable care in applying the primer to the pipe and allowing it to cure properly.

{¶45} "18. As a direct and proximate result of Dorsey's alleged negligence, the primer failed, causing unexpected damage to the top coats applied by Consolidated and

the pipe WMSI had installed for the pipeline project. The intermediate and finish coats have been cracked, split, and in some instances have completely fallen off the pipeline.

**{¶46}** "19. As a further direct and proximate result of Dorsey's alleged negligence, Clow has been damaged. It has been sued, suffered costs, expenses and fees, and will be required to pay hundreds of thousands of dollars to repair the damage to the coatings on the pipe, including replacing the top coats damaged by Dorsey's negligence."

**{¶47}** In addition to the negligence claim, the cross-claim alleged breach of contract for failure to properly prepare the pipe and apply the primer, indemnity, and contribution for damages.

**{¶48}** In its October 30, 2009 amended counterclaim against appellant, appellee alleged the following in pertinent part:

**{¶49}** "29. WMSI and now Clow have alleged that Dorsey was negligent and its negligence caused property damage, including but not limited to, damage to the top coats applied to the pipes by Consolidated and the completed pipeline generally.

**{¶50}** "30. Clow alleged claims against Dorsey for property damage caused by an occurrence as defined by the CIC Policy. However, CIC takes the position there has been no property damage caused by or an occurrence and wrongfully refused and continues to refuse to provide coverage and indemnification to Dorsey under the CIC Policy for Clow's claims.

**{¶51}** "31. There is an actual dispute among the parties as to whether the Clow Claims and WMSI's and Clow's allegations trigger coverage under the CIC Policy.

{¶52} "32. Accordingly, Clow is entitled to a declaratory judgment in its favor and against CIC that the claims asserted by WMSI and Clow seek to recover for property damage caused by an occurrence triggering CIC's obligations to provide defense and indemnity coverage to Dorsey."

{¶53} As is patently obvious from a review of the claims, appellee's causes of action are negligence and breach of contract. The very language of the negligence claim sounds as a claim for breach of contract. Evidently, appellee believes if you call a claim negligence and use the appropriate words, it is negligence, thereby adopting the old adage "if it looks like a duck and quacks like a duck, then it probably is a duck."

{¶54} We conclude there is no coverage for the lack of preparation of the pipe and misapplication of the primer for the following reasons.

{¶55} In *Bogner Construction Company v. Field & Associates, Inc.,* Knox App. No. 08 CA 11, 2009-Ohio-116, and *The Home Insurance Company of Illinois v. OM Group, Inc.,* Hamilton App. No. C-020643, 2003-Ohio-3666, this court and our brethren from the First District examined similar property damage claims and reached the same conclusion: although there may be a claim for damages to the product resulting in corrosion, there was no "occurrence" as defined by the policies to create a negligence claim for property damages resulting from an occurrence.

{¶56} In *The Home Insurance Company* case, utility poles were damaged due to the failure of a wood preservative applied to poles. *The Home Insurance Company* court found because the damage was to the poles upon which the product was applied, there was no "property damage" or "physical injury" to the property:

{¶57} "We find no error in the trial court's holding that OMG had failed to demonstrate the existence of 'property damage.'  The claims of the third parties did not allege that M-Gard had caused 'physical injury to or destruction of tangible property' under the policy language.  As the trial court aptly noted, the gravamen of the complaints was that M-Gard had failed to adequately protect the utility poles from decay caused by exposure to natural elements.  And while OMG argues that certain claims involved damage to property other than the poles themselves,***the basis of all the claims was that M-Gard had simply failed as a preservative.  Absent any allegation that M-Gard had caused physical injury to property, there was no coverage under the first prong of the 'property damage' clause in the policies."  *The Home Insurance Company* at ¶10.  (Footnote omitted.)

{¶58} Likewise, in *Bogner* at ¶44-49, this court acknowledged that defective workmanship did not constitute an "accident" or an "occurrence," and reiterated the general philosophy that commercial general liability policies do not cover negligent manufacture:

{¶59} "This Court, in *Environmental Exploration Company v. Bituminous Fire & Marine Insurance, Co.,* (Oct. 16, 2000), Stark App.No.1999CA00315, a case similar to the one sub judice, held that defective workmanship does not constitute an accident or an 'occurrence' under a Commercial General Liability policy:

{¶60} " 'Clearly, the complaint in the case sub judice***alleges faulty workmanship in the construction of the pipeline.***in its complaint...Appellants did not seek recovery for damages caused by the ruptured weld.  Rather, Appellee Power

Resources sought damages for expenses it incurred, including loss of use, lost profits and replacements costs, after the pipeline was later shutdown.

{¶61}  " ' "It is well established that a general commercial liability policy does not cover claims of negligent manufacture."***Courts, such as the ones cited above, generally have held that there is no coverage under a general comprehensive liability policy since defective workmanship does not constitute an 'accident' and since, without an 'accident', there can be no occurrence as such term is defined in the insurance policy.  For such reason, insurance coverage under general commercial liability policies is restricted to claims of negligent manufacture resulting in an occurrence.  *Reynolds Plastics,* supra.

{¶62}  " '***

{¶63}  " 'Accordingly, since there was, therefore, no property damage caused by an 'occurrence', which the general commercial liability insurance policy in this matter defines as an 'accident', Appellee was not entitled to coverage under such policy.  As was noted by the court in *United States Fid. & Guar. Corp. v. Advance Roofing & Supply Co., Inc.* (1989), 788 P.2d 1227, 1233.  [W]e recognize that there are some authorities that appear to conclude that the mere showing of faulty work is sufficient to bring a claim for resulting damages (of whatever nature) within policy coverage.  In our opinion, these authorities disregard the fundamental nature of a comprehensive general liability policy...and ignore the policy requirement that an occurrence be an accident.  If the policy is construed as protecting a contractor against mere faulty or defective workmanship, the insurer becomes a guarantor of the insured's performance of the

contract, and the policy takes on the attributes of a performance bond.  We find these authorities unpersuasive.'

{¶64}  " 'We also agree with the court in *Heile,* supra. that: 'In particular, [general commercial liability] policies such as the one here are not intended to insure 'business risks'-risks that are the 'normal, frequent, or predictable consequences of doing business, and which business management can and should control or manage.'  Courts generally conclude that the policies are intended to insure the risks of an insured causing damage to other persons and their property, but that the policies are not intended to insure the risks of an insured causing damage to the insured's own work.  In other words, the policies do not insure an insured's work itself; rather, the policies generally insure consequential risks that stem from the insured's work.' "   (Citations omitted.)

{¶65}  In the policy sub judice, under Exclusions, Section I(A)(2)(j)(6), damages as a result of Dorsey's work, incorrect application of the primer, is excluded:

{¶66}  " 'Property damage' to:

{¶67}  "That particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it.

{¶68}  "***

{¶69}  "Paragraph (6) of this exclusion does not apply to 'property damage' included in the 'products-completed operations hazard'."

{¶70}  The Mark 10 Report cited supra specifically found it was Dorsey's own misapplication of the primer that resulted in a lateral cohesive splitting and adhesive failure between the different layers of coatings and between the primer and the pipe.

**{¶71}** Based upon our conclusion that although appellee argues in negligence the claim is a contractual claim, the specific exclusions of Section I(2)(j)(6), (k), (l), and (m) apply.

**{¶72}** Upon review, we find there is no coverage under appellant's policy, and as a matter of law, appellee's amended counterclaim fails.

**{¶73}** The judgment of the Court of Common Pleas of Coshocton County, Ohio is hereby reversed.

By Farmer, J.

Gwin, P.J. and

Delaney, J. concur.

s/ Sheila G. Farmer_____

s/ W. Scott Gwin_____

s/ Patricia A. Delaney_____

JUDGES

SGF/sg 308

IN THE COURT OF APPEALS FOR COSHOCTON COUNTY, OHIO

FIFTH APPELLATE DISTRICT


THE CINCINNATI INSURANCE CO.         :
                                     :
    Plaintiff-Appellant              :
                                     :
-vs-                                 :          JUDGMENT ENTRY
                                     :
DORSEY RECONDITIONING, INC.,         :
ET AL.                               :
                                     :
    Defendants-Appellees             :          CASE NO. 10-CA-11


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Coshocton County, Ohio is reversed. Costs to appellee, Clow Water Systems Company.


s/ Sheila G. Farmer_____


_s/ W. Scott Gwin_____


_s/ Patricia A. Delaney_____

JUDGES